The People of the State of Illinois, Plaintiff-Appellee, *v.* Samuel J. Adams *et al.*, Defendants-Appellants.

(Nos. 56947-8 cons.; )

First District (2nd Division)—September 27, 1974.

Paul Bradley and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (James S. Veldman and Lee T. Hettinger, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

Indictment No. 71-640 charged Maurice Ferguson and Samuel Adams with the murder and armed robbery of Jimmy Gholson. After a hearing before a jury, both defendants were found guilty of armed robbery, but not guilty of murder. Both defendants received sentences of 8 to 14 years in the penitentiary.

At trial, eye-witness Eddie Caldwell testified for the State that, shortly after 12:30 A.M. on 11 October 1970, Jimmy Gholson and he were standing on a Chicago Transit Authority rapid-transit platform at the Kedzie Avenue Station on the Eisenhower Expressway. As they were standing there, they were approached by two individuals subsequently identified by Caldwell as the defendants, Maurice Ferguson and Samuel Adams. The individual identified as Adams first asked Gholson and Caldwell for some "reefers" and then announced a holdup. The individual identified as Ferguson was armed with a gun. The four individuals were standing directly under the platform lights, so that the witness was in a position to see both defendants clearly.

Gholson told Adams that Adams should get a job if he wanted money. Caldwell gave up $13 to Adams, but was permitted to keep some small change with which to pay his fare. Ferguson then began waving the gun in Caldwell's face; whereupon Adams told Ferguson to "cool it". Gholson first denied that he had any money, but was then threatened by Ferguson with being shot in the leg. At this point Gholson gave his wallet to Adams. Gholson then grabbed Ferguson, and the gun went off. The gun was knocked in the air and landed on the tracks. Ten or 15 minutes had elapsed between the time the robbery was first announced and the time Gholson began fighting with Ferguson.

While Gholson was struggling with Ferguson, Adams, with Caldwell in pursuit, fled along the platform, up a ramp to the station at street level, and out on to the street. Caldwell testified that he saw Adams, as Adams was running, take money from Gholson's wallet and throw the wallet away on the platform. Caldwell caught up with Adams on the street and fought with him for a period of time, but Adams managed to escape. A police officer, who arrived too late to be of assistance to Caldwell in capturing Adams, testified to having observed Caldwell fighting with an individual having the same physical characteristics as Adams, but the officer was not able to make a positive identification.

Caldwell and the police officer then returned to the platform where they saw Gholson lying on the tracks with Ferguson standing over him. Ferguson fled down the tracks. Caldwell lifted Gholson to the platform

and noticed that he was wounded in the stomach. It was from this wound that Gholson later died.

Immediately after the incident, Caldwell went to the police station and looked at books of photographs for 2 or 3 hours. He did not make an identification from any of the photographs. That same night, Caldwell was then taken to Cook County Hospital (where he was again taken about two or three weeks later) to view the people in certain wards. On each occasion, Caldwell did not recognize any of such persons as his assailants. Two days after the incident, police officers brought 15 photographs to Caldwell's home. Again, Caldwell did not recognize any of the pictured individuals as the offenders. Finally, about a month after the incident, a police officer brought nine photographs to Caldwell's home. It was from this group of nine photographs that Caldwell identified defendants Adams and Ferguson, but he added that he would want to view both individuals in a lineup in order to be more sure of his identification.

Adams was arrested on 24 November 1970. At the time of his arrest, he attempted to flee from the police and, when asked for his name, he gave an alias. A lineup consisting of four young male Negroes was held. Caldwell identified Adams as the assailant with whom he had fought on the night of the robbery.

Ferguson was arrested on 19 February 1971. A lineup of five young male Negroes was held. Caldwell identified Ferguson as "the guy that had the gun that did the shooting."

At trial, both defendants interposed an alibi defense. Ferguson testified that he was with one Evelyn Fisher in a hotel room at the time of the robbery, having left the house of one Vera Boyd around midnight on the night of 10-11 October 1970. Evelyn Fisher corroborated Ferguson's testimony. Adams testified that he was with one Coley and one Hinton in his room at the time of the robbery. Defense counsel attempted to locate Coley and Hinton for the purpose of corroboration, but was unable to do so.

In rebuttal, the State called a police officer who had interviewed Evelyn Fisher about a week prior to the trial. The officer testified that Ms. Fisher had then told him that, at the time of the robbery, both she and Ferguson were at the home of Vera Boyd. The officer had tried to contact Vera Boyd, but had been unsuccessful.

Defendants' (hereafter appellants') first contention on appeal is that the trial court erred in not granting appellants' motion to suppress their in-court identification on the ground that the lineup identification procedures were unnecessarily suggestive and conducive to an irreparably

mistaken identification. The thrust of appellants' contention is that, because Caldwell had first viewed appellants' photographs alone with the police officer and had then asked to view appellants in a lineup, his subsequent identification of appellants at the lineup was already preconditioned.

■■ There is nothing in the record to indicate that there was anything suggestive either in the photographic identification procedure itself or in the lineup procedures themselves. On the contrary, from the record, eye-witness Caldwell appears to have been a careful and conscientious man. Over a period of several weeks he had spent hours of time in looking at photographs and in personal observation of persons in hospital wards, and had been unable to make an identification. When he finally made the photographic identification, he himself asked that he be enabled to confirm his photographic identification by a subsequent lineup identification. Under these circumstances, his request, far from disclosing any pre-conditioning, was a further indication of carefulness. We also take note of the fact that the record shows a more than adequate independent basis for his in-court identification in his opportunity for observation of appellants on the scene of the incident. See *People v. Martin* (1970), 47 Ill.2d 331, 265 N.E.2d 685, and *People v. Lenair* (1970), 130 Ill.App.2d 147, 264 N.E.2d 525.

■ ■ Appellants next contend that a fatal variance exists between the proof adduced at trial and the crime charged in the indictment. The indictment charged that defendants "while armed with a dangerous weapon took an amount of United States currency (the exact amount of which is unknown * * *) from the person and presence of Jimmy Gholson, * * *." Appellants contend that the evidence at trial did not establish that any currency had been taken from Jimmy Gholson. While, however, Gholson first denied that he had any money, he was then compelled to hand over his wallet to Adams, and Caldwell's testimony that he saw Adams take money from Gholson's wallet was sufficient, if believed by the jury, to establish this element of the offense and to conform the proof to the indictment.

Appellants' third contention on appeal is that they were prejudiced by the admission into evidence of the police photographs from which they had been initially identified by Caldwell. The thrust of this contention is that the character of the photographs (Police Department "mug shots") alerted the jury to the fact that appellants had prior criminal histories and therefore denied them the right to a fair trial.

■■ We agree that the introduction of "mug shots" into evidence can be prejudicial as evidence of other criminal activities. (*People v. Murdock* (1968), 39 Ill.2d 553, 237 N.E.2d 442. See also *People v. Killebrew* (1973), 55 Ill.2d 337, 303 N.E.2d 377.) However, "mug shots" may

nevertheless properly be admitted where they are being admitted for the purpose of showing how defendants could have been accurately identified from them and not merely for the purpose of prejudicing the jury by showing prior unrelated encounters with the police. See *People v. Maffioli* (1950), 406 Ill. 315, 94 N.E.2d 191; *People v. Purnell* (1969), 105 Ill.App.2d 419, 245 N.E.2d 635.

In the instant case, counsel for both appellants had attacked the identification procedure as suggestive. The trial judge ruled that the jury should see for themselves whether or not there was anything suggestive in the series of photographs from which appellants had been initially identified by Caldwell. In addition, photographs of the two line-ups were also admitted into evidence for the same purpose. The case at bar is similar to *People v. Bleimehl* (1972), 9 Ill.App.3d 273, 292 N.E.2d 60, where an entire "mug book", which contained, *inter alia*, photographs of the defendants, was introduced into evidence to allow the jurors to see for themselves just how fair or unfair the photographic identification procedure had been.

We hold that, under the circumstances of the instant case and particularly in view of appellants' challenge to the fairness of the identification procedure, the probative value of the series of photographs far outweighed any incidental prejudice to appellants. The cases of *People v. Hawkins* (1972), 4 Ill.App.3d 471, 281 N.E.2d 72, and *People v. Hudson* (1972), 7 Ill.App.3d 333, 287 N.E.2d 297, cited by appellants (both of which arose out of the same factual situation), are sufficiently distinguishable on their facts to make them inapplicable to the instant case.

■■ Finally, appellants contend that certain comments of the prosecutor during closing argument prejudiced the jury against them. Without treating the substance of each comment complained of, it is our opinion that, even if the comments were improper, they related to matters of such little relative importance that they could not reasonably have affected the outcome of the trial. These appellants were positively identified in court by an eye-witness to the charged armed robbery who had more than ample opportunity for on-scene observation, and the identification of that eye-witness was unshaken throughout the course of the trial. Any prejudice to appellants from the alleged improper comments during final argument could have had little or no effect on the jury and their ultimate decision. See *People v. Nilsson* (1970), 44 Ill.2d 244, 255 N.E.2d 432.

For the foregoing reasons, the judgments of conviction are affirmed.

Judgments affirmed.

STAMOS and LEIGHTON, JJ., concur.