THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES ALBERT DUMAS, a/k/a Leroy Henry Dunson, a /k/a James A. Johnson, Defendant-Appellant.

Fourth District   No. 13830

Opinion filed June 13, 1977.

Richard J. Wilson and Barbara A. Chasnoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The defendant, James Albert Dumas, was charged by a Vermilion County information with murder and armed robbery, violations of sections 9—1 and 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 9—1, 18—2). The defendant was tried before a jury, found guilty of both offenses and thereafter sentenced to 100 to 150 years imprisonment for murder.

On August 21, 1975, Robert Kirts, the manager of a Shell gasoline station in Danville was working with one of his employees, 15-year-old David Grinestaff. At 8:55 p.m., Grinestaff entered the station building to prepare for closing and at 9:30 p.m., Kirts, who was working on an automobile in the bay, heard a gun discharge in the station's office. After turning around and rushing into the office, Kirts discovered that Grinestaff had been shot and that another boy was present in the office. The other boy was one of two boys who had been at the station since at least 8:55 p.m. when Kirts returned from supper. Kirts immediately called for the police and an ambulance, noticed that the cash register drawer was open and that he and Grinestaff were by then alone on the premises. Kirts did not observe anyone fleeing the premises.

Grinestaff was thereafter transported to the emergency room of St.

Elizabeth's Hospital where he died as a result of chest and arm wounds at 1:25 a.m. on August 22, 1975, before the police could interview him.

At trial, Thomas Parham, Darrell Halbert and Jill Landers testified that they were driving past the Shell station in separate automobiles at the approximate time that the aforementioned incident occurred. The three witnesses testified that they observed two young black boys running from the station after a shot was fired. Parham and Halbert thought the two were about 16 or 17 years old. Parham noticed that one of the boys was wearing a hat and Landers observed that one of the boys was armed with a long-barreled gun.

Late in the evening of August 21, 1975, and early the next morning, the police conducted a ground search of the area near the gasoline station and discovered a hat (People's Exhibit No. 3) next to a phone booth just east of the station, a "tan loafer-type shoe" (People's Exhibit 4A), a braided shoe (People's Exhibit 4B) and a pair of blue trousers (People's Exhibit No. 5).

On August 17, 1975, 4 days prior to the murder and robbery, defendant was arrested for running a red light. The defendant was in the process of taking his vehicle to the Danville Holiday Inn where his uncle, Lennel Dumas, was going to pick him up. The uncle was following defendant's car when he was arrested, but the arresting officer permitted the defendant to proceed to the Holiday Inn where he left his car, a gun and four bullets with the uncle. At trial, the uncle testified that the gun was the same as People's Exhibit No. 2, a long-barreled .38 special. The defendant retrieved the gun later that same evening. On both occasions, defendant was wearing shoes which the uncle identified as People's Exhibits 4A and 4B. Defendant's cousin, Ernest Rhodes, testified for the defense that Lennel Dumas returned the gun and bullets to the defendant at Rhodes' house, with Rhodes present.

Ivory Isom testified that he met the defendant on the morning of August 21, 1975, when he appeared at Isom's home with Leroy Mason. The defendant was attired in a tank top, demim hat similar to People's Exhibit 3, blue pants and shoes with brown tweed laces similar to People's Exhibits 4A and 4B. This outfit was similar to the outfit that witnesses said was worn by one of the perpetrators of the crime.

The defendant, Isom and Mason then joined Donald Orrington in Orrington's car and, while driving past the Shell gasoline station where Grinestaff's murder and the armed robbery occurred much later that same day, the defendant said, "[s]omething about making a hustle" and that "* * * the gas station across the street * * * seemed like it'd be an easy place to make a hustle." The defendant exited from the car and asked its occupants to let him know if "[i]t was clear to make his hustle." Isom did not see the defendant enter the gas station but the three picked him up

after they circled the block. Afterward, they let defendant out near Ernest Rhodes' home.

On August 29, 1975, the defendant was arrested on a bus at the Union Bus Depot. When informed he was under arrest, the defendant rushed at and attempted to wrest a shotgun from a police officer. People's Exhibit No. 2, a long-barreled .38 Colt revolver, was discovered in the defendant's possession at the time of his arrest.

At trial, Larry Lorsbach, an Illinois Bureau of Investigation criminalist testified that he had examined People's Exhibits Nos. 2 (defendant's revolver) and 14 (a slug removed from the decedent's body) and that, while he found similarities between the bullet's and weapon's markings, owing to the condition of the slug, he could not positively say that the slug had been fired from the defendant's revolver. Professor Joseph Nicol, a professor of criminal justice at the Chicago Circle campus of the University of Illinois and a prior superintendent of the Illinois Bureau of Investigation testified, after examining the exhibits, that there was a "* * * strong probability that the evidence bullet, People's Exhibit 14, was fired from the .38 Special Colt, People's Exhibit 2."

On appeal, the defendant has presented essentially three issues for our review: (1) whether the court committed reversible error in allowing allegedly inadmissible evidence and prejudicial closing argument to be presented to the jury; (2) whether defendant's guilt has been proved beyond a reasonable doubt, and (3) whether defendant's conviction must be reversed because he neither waived nor was charged by indictment.

The defendant contends that the State improperly bolstered the testimony of Darrel Isenberg by eliciting a statement from Isenberg about his submitting to a polygraph examination. Isenberg's statement, however, was clearly inadvertent, not prompted by the State and did not go to a material issue concerning the defendant's innocence or guilt. Rather, in response to a preliminary question intended to establish why the witness was in the county jail where he spoke with the defendant, the witness blurted out:

> "I took a lie test to prove to you that I wasn't guilty of those charges, and, at the same time, I was asked questions about this case."

In *People v. York* (1975), 29 Ill. App. 3d 113, 329 N.E.2d 845, the defendant successfully argued that the trial court erred in permitting testimony that the two complaining witnesses in an aggravated incest prosecution had taken polygraph examinations. The court held that "* * * any evidence of the veracity of the complaining witnesses about the charges lodged against defendant was clearly prejudicial to defendant." (29 Ill. App. 3d 113, 120, 329 N.E.2d 845, 850.) *York,* however, is distinguishable from the instant case because the entire

prosecution in *York* hinged on the veracity of those witnesses—the implication of the testimony being that the cause would not have been prosecuted had the polygraph results been negative.

We note that we have previously addressed the question of whether it is reversible error for a witness to improperly attempt to testify about a polygraph examination to which he has been subjected. (*People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310.) In *Parisie,* we stated:

"There is no question but that both the giving of a polygraph examination, as well as the results of such a test, are inadmissible in evidence as proof of either the guilt or innocence of a defendant, except by stipulation. The case law is unquestionably in accord. (*People v. Nicholls*, 44 Ill. 2d 533, 256 N.E.2d 818, 822; *People v. Zazzetta*, 27 Ill. 2d 302, 189 N.E.2d 260, 263.) But the facts in issue here do not bring us within the gamut of the general rule. The testimony regarding the taking of the polygraph test was purely with reference to the *witness* and *not* the *defendant*. It did not go to any material issue as to defendant's guilt or innocence of the offense of murder.

" * * * [T]he Illinois Supreme Court has held that evidence concerning a *defendant's* having taken a polygraph test, even though inadmissible, was minor, harmless and certainly not reversible error. (*People v. Bernett* (1970), 45 Ill. 2d 227, 258 N.E.2d 793, 801; *People v. Flowers* (1958), 14 Ill. 2d 406, 152 N.E.2d 838, 843; *People v. Melquist* (1962), 26 Ill. 2d 22, 185 N.E.2d 825, 829.) Here, the court sustained the objection to the witness's answer that he had taken a polygraph test, (there was no answer as to what the results of the test were) and the court instructed the jury to disregard the testimony. We are of the opinion that the error here, *if any,* is harmless and most certainly not of sufficient prejudice to the defendant to be reversible." 5 Ill. App. 3d 1009, 1036-37, 287 N.E.2d 310, 326-27; accord, *People v. Sweeney* (1977), 46 Ill. App. 3d 858, 361 N.E.2d 344.

■■ Here, although Isenberg attempted to testify about his polygraph examination, the results of that examination were not presented to the jury. The court sustained defendant's objection to Isenberg's unsolicited answer and instructed the jury to disregard the answer. Accordingly, we find that the alleged error, if any, was harmless.

Darrel Isenberg also testified to a conversation he had with the defendant while they were incarcerated together. Defendant had stated that he was in jail on charges of murder, robbery and car theft, but he thought he could blame the car theft on another person. Counsel objected to the testimony saying it was improper for the State to bring out evidence of defendant's other alleged crimes—crimes for which he was

not being tried. The court reserved judgment on the objection, but told the prosecutor he was following a dangerous course and subsequently gave to the jury the instruction on limited use of evidence of other crimes. Illinois Pattern Jury Instructions, Criminal, No. 3.14 (1968).

As a general rule, evidence of other crimes committed by a defendant is inadmissible because of the clear risk of prejudicing the defendant unless the evidence shows motive, intent, identity, absence of mistake or *modus operandi* relevant to the crime for which the defendant is being tried. (*People v. Romero* (1977), 66 Ill. 2d 325, 330, 362 N.E.2d 288, 290.) Furthermore, it is left to the sound discretion of the trial judge to weigh the probative value of the evidence of other crimes against its prejudicial effects. *People v. Rogers* (1975), 31 Ill. App. 3d 981, 985, 335 N.E.2d 48, 52; see McCormick, Handbook of the Law of Evidence, §190 (2d ed. 1972).

In *People v. Cherry* (1971), 130 Ill. App. 2d 965, 267 N.E.2d 744, a police officer testified to the defendant's being brought to the police station on a prior occasion. In holding that the statement constituted harmless error, the court noted that the statement was neither expanded, nor did the State exploit it by arguing that the defendant was a "police character."

■■ The instant case is similar to *Cherry*, because the State presented a total of 27 witnesses and numerous exhibits, but only Darrel Isenberg referred to the other charge against the defendant. The prosecutor did not stress the statement in his closing argument. Accordingly, we hold that Isenberg's statement constituted, at most, harmless error.

Defendant contends that the prosecutor's closing argument was inflammatory and intended to prejudice the jury by making irrelevant references to the decedent's family.

Generally, references to the surviving family of the deceased in murder cases has been "condemned" by our supreme court because the defendant's guilt must be established by competent evidence uninfluenced by bias or prejudice. (*People v. Bernette* (1964), 30 Ill. 2d 359, 371, 197 N.E.2d 436, 443; *People v. Wilson* (1972), 51 Ill. 2d 302, 306, 281 N.E.2d 626, 628.) Such references, however, may be harmless, depending on the circumstances of the case. In *Wilson*, the prosecutor made general references to the decedent's standing in the community and to his young widow and two children, while in *Bernette*, the widow was placed on the stand and asked about the details of her marriage, children and family life. The prosecutor closed by referring to her testimony. In *Wilson*, the supreme court affirmed the defendant's conviction, while in *Bernette*, it reversed.

■■ In the instant case, without objection, the prosecutor in closing stated:

"I got to talk first and last because we have the burden of proof. We've met the burden of proof. I know you have to deliberate and I know it's going to take you a while, but I and David's mother and David's father will be waiting anxiously for your verdict, so, please, don't disappoint us. We hope and expect to see justice done.

* * * You can [*sic*] have the picture. I think you've got the picture. I think the picture is very clear. It's a very ugly picture, but it's there. It's a picture that will be seared in the minds of Mr. and Mrs. Grinestaff, the mother and father and the step-parents of this boy, all their lives."

Defense counsel, however, did not object to these specific prosecutorial comments during the closing argument. We find that these comments were not so inflammatory as to sway the jury in its verdict. Accordingly, we hold these prosecutorial comments to be, at most, harmless error.

■■ Defendant also argues that the prosecutor's closing argument focused on the fact that defendant did not testify and that those comments purposefully prejudiced him. The prosecutor stated:

"Now ladies and gentlemen of the jury, it would be a sad state of affairs if we had to have an eyewitness to every murder, because often that's one of the reasons the person ends up murdered. So there will be no eye-witness, and that is why we have circumstantial evidence—that is why we have evidence introduced when people make incriminating admissions and statements to show that they did in fact commit the crime. There aren't a whole lot of murders of this kind where there is any eye-witnesses except the one who is dead and the one who did it and the one who helped him to do it and none of them are going to talk."

■■ This court has held that gratuitous remarks, whether intentional or unintentional, which call the jury's attention to the fact that defendant did not testify are grounds for reversal. (*People v. Holman* (1974), 19 Ill. App. 3d 544, 546, 311 N.E.2d 696, 698.) In that same opinion, however, we also stated that such remarks are only harmless error if they do not contribute to the jury's verdict. Here, there was no effort on the part of the prosecutor to directly identify the defendant as being a member of the group described by the prosecutor. We cannot say that this comment contributed to the verdict of the jury.

Defendant contends that all of the allegedly inadmissible evidence and allegedly prejudicial argument that we have discussed above had a cumulative effect which denied defendant a fair trial.

We have carefully reviewed the record of defendant's trial and we cannot say that the arguable errors which we have already discussed in

this opinion have a cumulative effect which denied defendant a fair trial. Compare *People v. Sullivan* (1977), 48 Ill. App. 3d 787, 362, N.E.2d 382, with *People v. Lotts* (1977), 48 Ill. App. 3d 684, 362 N.E.2d 312.

Defendant contends that the evidence presented at trial failed to prove his guilt beyond a reasonable doubt.

Primarily, defendant contends that the testimony of witnesses Kirts, Parham, Landers and Halbert identified two young boys or teenagers as the possible perpetrators of the crime and that defendant, a 31-year-old man, could not be one of the persons described by the witnesses. Defendant also contends that the damaging testimony of Darrel Isenberg, defendant's cellmate, cannot be believed because Isenberg was a convicted criminal, on parole, who had charges against him dropped by the very prosecutor who prosecuted the defendant herein. *People v. Hermens* (1955), 5 Ill. 2d 277, 285, 125 N.E.2d 500, 505.

An appellate court reviewing the sufficiency of evidence in a criminal case should not reverse a conviction unless it can be said that there is clearly a reasonable and well-founded doubt as to the guilt of the accused and the verdict is palpably contrary to the weight of the evidence. (*People v. Williams* (1976), 65 Ill. 2d 258, 268, 357 N.E.2d 525, 530.) This court has also said that a reviewing court should not substitute its judgment for that of the jury. Rather, the credibility of witnesses will be a question left for the trier of fact who heard the evidence presented and observed the demeanor of the witnesses. *Rogers.*

Here, although defendant's conviction appears to be primarily based on circumstantial evidence, there is sufficient evidence to support the jury's verdict. Defendant's participation in the crime was amply demonstrated by testimony concerning his activity on the morning prior to the crime, the clothing exhibits, the ballistics testimony, his possession of the alleged murder weapon before and after the offense and by the testimony of Darrel Isenberg which disclosed that defendant admitted committing the crime.

■■ The record reflects that the defendant's appearance matched the witnesses' description of one of the two boys who were seen fleeing the gasoline station after the crime was committed, except for the age description. We find that age variance, however, to be insignificant in view of all of the other evidence supporting the jury's verdict. In addition, we find that there was sufficient evidence to sustain the jury's verdict whether or not they believed the testimony of Isenberg.

■■ Finally, defendant contends that his felony convictions for offenses occurring on August 21, 1975, must be reversed because he neither waived nor was charged with the offenses by indictment. This precise question, however, was recently decided by this court adversely

to the defendant's contention in *People v. Tibbs* (1977), 46 Ill. App. 3d 310, 360 N.E.2d 993. Accordingly, for the reasons expressed in *Tibbs,* we decide this issue adversely to the defendant.

Affirmed.

CRAVEN, P. J., and HUNT, J., concur.