THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PERCY LEE JONES, Defendant-Appellant.

Fourth District   No. 14695

Opinion filed July 21, 1978.

444

Bruce Gammage, of Farmer City, for appellant.

Stephen H. Peters, State's Attorney, of Clinton (Robert C. Perry and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The defendant, Percy Lee Jones, appeals his convictions for murder, aggravated kidnaping, theft of property valued in excess of $150, and unlawful use of weapons, violations of sections 9—1, 10—2, 16—1(e)(3), and 24—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1, 10—2, 16—1(e)(3), 24—1). Defendant received concurrent sentences of 60 to 100 years' imprisonment for murder, 15 to 30 years for aggravated kidnaping, 3 to 10 years for theft, and 1 to 3 years for unlawful use of weapons. Defendant only appeals his convictions, not the sentences imposed thereon.

On appeal, defendant contends that he was denied a fair trial by: (1) the presentation of a post-mortem facial photograph of the victim to the jury; (2) the prosecutor's opening statement; (3) the presentation to the jury of evidence of his involvement in the allegedly unrelated theft of two automobiles; and (4) the alleged incompetence of his court-appointed counsel.

During defendant's trial, testimony established that the defendant and an acquaintance from Chicago, Donald Woodruff, left Chicago during the early morning hours of Friday, February 11, 1977, in a 1973 silver and maroon Buick Century automobile bearing license plate number DS 8841. The automobile was stolen from Derrick Smith by the defendant who used a shotgun to shoot Smith in the foot. From that time until approximately noon on Monday, February 14, 1977, the defendant and Woodruff resided at a rooming house in Champaign which was maintained by Katherine Lewis. After 2 p.m. on February 14, 1977, a number of witnesses observed defendant and Woodruff in the Buick. Two witnesses even observed a white man with defendant and Woodruff

as the trio suspiciously entered the Buick at the parking lot of a Clinton foodstore. Later that afternoon, an Illinois Central-Gulf R.R. Co. employee discovered the body of the 18-year-old victim, Tony Fairchild, lying face down in a snowy ditch south of Clinton. Fairchild appeared to have been shot in the head with a shotgun.

At noon on the day of the murder, the victim's girlfriend, Sheila Thompson, accepted a ½-hour ride in the victim's 1976 Pontiac Firebird "Trans Am" at which time she observed a coffee can (People's Exhibit No. 30) which was three-fourths full of small change. The witness also identified People's Exhibit No. 50 as an 8-track tape deck she had given the victim at Christmas 1976. Another witness, Richard Lynn, a motel employee in East Peoria, testified that he installed the tape deck in an Oldsmobile Cutlass for Donald Woodruff for $5. The Cutlass was parked next to Derrick Smith's Buick Century at the time of the installation.

Edith Karch, a teller at the Commercial Bank in Champaign testified that at 3:35 p.m. on the day of the murder, a black man asked her to cash a coffee can full of change for him. The coffee can was People's Exhibit No. 30. The change totaled $41.65 and the man left the coffee can at the bank in the pot of a window plant. Although Ms. Karch could not identify the black man, another customer present at the time, Paul Selin, identified Woodruff as Ms. Karch's customer.

At the time of their arrests on February 17, 1977, Woodruff and the defendant were registered guests at the Best Inns Motel in Peoria. The defendant was assigned Room 245 and Woodruff was assigned Room 243. Upon obtaining search warrants for the rooms, the police discovered a shotgun, People's Exhibit No. 37, beneath a pillow in Room 245. Sergeant Gary Locke of the Peoria Police Department testified that he arrested defendant while defendant was driving the Buick which had been stolen from Derrick Smith in Chicago. Locke testified that, at the time of his booking, the defendant stated that: "[I]f his partner had been in the car, his partner would have crawled into the back seat and shot me, * * * [that] they had rented more than one motel room at the Best Inns Motel[,] * * * [that] they had planned to die, if necessary[,] * * * [and that] they were waiting for their girlfriends to arrive from Chicago at midnight." Shortly after his arrest and while being interviewed at the county jail in Peoria, defendant stated, "Those people will probably think the killing was racially connected, but it really wasn't."

Daniel Edminson testified that he was a Vandalia inmate serving time after pleading guilty to forgery and auto theft. He stated that he and the defendant served time together in the Champaign County jail in late February and that he occasionally spoke with the defendant. During one of those conversations, the defendant told him he had killed a man in

Clinton by shooting him with a sawed-off shotgun because he wanted the victim's "Trans Am," that he enjoyed the murder, that he thought it was funny, and that a fellow named Don "chickened out" so he committed the crime himself after ordering the victim to lie down in a ditch. On cross-examination, the witness stated that he originally denied overhearing defendant's statement, but that he admitted hearing the statement just prior to his sentencing hearing. Dale Locke, Sr., the Champaign County jailer, also testified that he overheard the conversation between Edminson and the defendant on February 26, 1977.

The photograph objected to by defendant is an 8" x 10", black and white photograph of the victim's upper body as it rested at the scene of the crime, after a State crime scene technician rolled the victim onto his back. The photograph clearly displays the part of the victim's head which was blown away by the pointblank blast of a shotgun. Although defendant objected to admission of the photograph into evidence, it was admitted after the coroner and crime scene technician testified that it accurately depicted the condition of the victim.

■■ The general rule is that the admission of photographs of the victim of a murder is a matter reserved to the sound discretion of the trial judge. (*People v. Myers* (1966), 35 Ill. 2d 311, 331, 220 N.E.2d 297.) Where the photograph is relevant and establishes some fact in issue, it is admissible even though it has a gruesome nature. (*People v. Henenberg* (1973), 55 Ill. 2d 5, 13-14, 302 N.E.2d 27.) The photograph may be relevant to the victim's identity (*People v. Gerecke* (1977), 45 Ill. App. 3d 510, 514, 359 N.E.2d 1178), to corroborate evidence concerning an unusual cause of death (*People v. Newbury* (1972), 53 Ill. 2d 228, 242, 290 N.E.2d 592) or to assist the jury in understanding medical testimony concerning the cause of death. *People v. Owens* (1976), 65 Ill. 2d 83, 90, 357 N.E.2d 465.

In *Henenberg*, the court stated it was not error to admit a photograph of the victim's badly decomposed skull (showing a bullet hole) and left arm (in a cast). In *Myers*, the court found no error in the admission of photographs of a 10-year-old female victim's body with her hands tied behind her back, a cloth tied across her mouth, and a bullet wound in her forehead. In *Gerecke*, five color photographs were taken at the scene of a shotgun slaying and at the morgue prior to an autopsy.

■■ In the instant case, the photograph to which the defendant objects clearly corroborates the testimony of a pathologist, Dr. Abraham Ginsberg, who examined the victim's body and gave his opinion as to the cause of death. The photograph also corroborated the testimony of a number of other witnesses who testified in regard to the physical appearance and clothing of the victim just prior to his abduction.

■■ The mere fact that the photograph was cumulative in nature and that the deceased's body had been rolled over prior to the photographing

do not, standing alone, require reversal. A photograph is not necessarily cumulative because it graphically illustrates the oral testimony of live witnesses. (*Henenberg; Gerecke; People v. West* (1977), 54 Ill. App. 3d 903, 909, 370 N.E.2d 265, 270.) Merely rolling the body over does not constitute such a change of condition as to render the photograph inadmissible. (See *West; People v. Smith* (1974), 20 Ill. App. 3d 756, 760, 314 N.E.2d 543.) This is especially true where the witnesses have testified that the body has been rolled over or that the scene has been changed in some small way, but that the photograph still accurately depicts the general scene.

In her opening statement on behalf of the State, Gerri Papushkewych told the jury that, "An Illinois Central-Gulf Railroad employee driving along saw a dead body face down, a portion of his head blown off, saw a tire track and on the body was found approximately a dollar in the wallet." Papushkewych also stated, "The evidence will show that they went to Clinton on February 14th and the evidence will also show and the [P]eople will prove that on February 14th they drove Tony Fairchild to a road outside of Clinton and that they took him to a ditch, that he laid down and that they shot his head off. Those are the facts, ladies and gentlemen, that you will be hearing from the witness stand."

■■ The record reflects that defendant did not object to Papushkewych's statement as it was being made. It is noted in *People v. McShan* (1975), 32 Ill. App. 3d 1068, 1071-72, 337 N.E.2d 263, that a defendant must make a timely objection to improper matters contained in the State's opening statement. Since no such objection was made in the instant case, we find that this issue has been waived. Obviously, the prosecutor's opening statement needlessly exaggerated the horror which accompanied the victim's death. It was not, however, probative of defendant's guilt or innocence and it was not emphasized by the prosecutor. Had it not been waived, the error contained in the prosecutor's argument would only have been harmless in nature. *People v. Miller* (1975), 31 Ill. App. 3d 115, 120-21, 333 N.E.2d 264; *People v. Bell* (1975), 27 Ill. App. 3d 171, 176, 326 N.E.2d 507.

Marlin Snodgrass, the owner of the Avenue Auto Sales in Champaign identified People's Exhibit Nos. 35 and 58 as photographs of two automobiles that he had on his lot on the morning of Tuesday, February 15, 1977, but which were stolen before he returned from Indiana at 5:25 p.m. that day. John Kelsey, an Illinois State Trooper, testified that he observed the Cutlass depicted in People's Exhibit No. 58 at the Best Inns Motel in Peoria when he went there to arrest Donald Woodruff on February 17, 1977. The second vehicle (which was depicted in People's Exhibit No. 35) stolen from Avenue Auto Sales was discovered by Detective Michael Cook and Officer Gerald Schweighart of the

Champaign Police Department. Attached to the front windshield of that vehicle was a temporary registration certificate bearing defendant's name.

■■ The State poses a number of alternative theories to support the admissibility of evidence of defendant's participation in the theft of two Oldsmobile Cutlasses from the Avenue Auto Sales in Champaign on February 15, 1977. First, the State argues that the evidence tended to show a common scheme or design consistent with the State's theory that the defendant and Donald Woodruff intended to steal Tony Fairchild's car when they abducted him in the parking lot of a grocery store in Clinton, Illinois. This theory is supported by the defendant's statement to Officer Gerald Sweighart that he and Donald Woodruff discussed stealing the victim's "Trans Am" and by the fact that the passenger's window of the "Trans Am" had been smashed on the afternoon of the murder. That the kidnaping and murder were induced by the prospect of obtaining the victim's car is further illustrated by the evidence linking the defendant with the theft of several cars in Champaign the following afternoon. Accordingly, evidence of the events in Champaign was properly admitted to prove a common scheme or design. (*People v. Wilson* (1970), 46 Ill. 2d 376, 380-81, 263 N.E.2d 856.) Next, the State contends that evidence of the scheme to obtain another car in Champaign was highly relevant because it served to establish the defendant's motive, *i.e.*, to steal the victim's automobile. Evidence of the thefts in Champaign thus was admissible since it tended to explain the defendant's apparent motive in committing the acts for which he was tried. (*People v. Dumas* (1977), 49 Ill. App. 3d 756, 761, 364 N.E.2d 616, 620.) Finally, the State argues that the evidence could be admitted, on the authority of *People v. Gambino* (1957), 12 Ill. 2d 29, 145 N.E.2d 42, to establish that defendant fled in a stolen automobile. In this case, however, there is no evidence which establishes that defendant actually fled to Peoria in one of the stolen vehicles. Accordingly, *Gambino* is inapplicable in the instant case.

Even though the evidence of defendant's theft of the two automobiles from a Champaign automobile dealer's lot was properly presented to the jury for the reasons outlined above, it is also clear that defendant failed to make a timely objection to the evidence. Thus, the error alleged in this issue, like that alleged in the preceding issue, has been waived by the defendant. *People v. Akis* (1976), 63 Ill. 2d 296, 299, 347 N.E.2d 733; *People v. Boyce* (1977), 51 Ill. App. 3d 549, 563, 366 N.E.2d 914.

Defendant's final contention is that the public defender appointed to represent him was incompetent. To support this contention, defendant has directed our attention to counsel's failure to object to evidence presented to the jury and to the State's opening statement. As we have already noted, however, those objections need not have been granted by

the court. Defendant has also directed our attention to *People v. Blevins* (1911), 251 Ill. 381, 96 N.E. 214, for the proposition that allegedly incompetent representation deprives a defendant of a fair trial if the court permits an inexperienced court-appointed defender to be overwhelmed by a number of able prosecutors.

We have carefully reviewed the record in the instant case and we have been unable to discover a factual basis for defendant's allegation that his attorney was incompetent or utterly overwhelmed by the prosecutors for the State. Constitutional requirements concerning the right to counsel are satisfied unless it can be said that the representation given by counsel was so poor as to amount to no representation at all or to reduce the proceeding to a farce or mockery. (*People v. Elliott* (1977), 46 Ill. App. 3d 887, 890, 361 N.E.2d 852, 854; *People v. Robinson* (1977), 52 Ill. App. 3d 658, 666, 367 N.E.2d 1034, 1039.) Furthermore, there is a heavy burden on the defendant of showing that his representation was of such low caliber as to reduce the trial to a farce. (*People v. Seaman* (1977), 53 Ill. App. 3d 755, 756, 368 N.E.2d 1124, 1125.) Here, that burden had not been met.

Subsequent to his appointment, defense counsel requested that defendant be examined to ascertain his fitness to stand trial. On the motion of defense counsel, a psychiatrist was selected to examine the defendant, but his evaluation indicated that defendant was competent to stand trial.

Defense counsel filed a pretrial motion to suppress as evidence all statements made by the defendant in connection with the instant case. The testimony of Officers Locke, Poynter, and Cook at the suppression hearing established that the defendant had been advised of his constitutional rights on at least four separate occasions before his statement was recorded. The trial court denied the motion to suppress, finding that the defendant was properly advised of his rights and that his election to waive these rights was knowing and voluntary. In fact, the evidence presented at the hearing suggested that the defendant was eager to speak with the police after he was taken into custody.

At the beginning of defendant's trial, prospective witnesses for the State were excused from the courtroom on motion of defense counsel. During trial, defendant's attorney made an opening statement, raised specific objections to the admission in evidence of various exhibits tendered by the prosecution, cross-examined more than 20 of the State's witnesses, conducted an examination of the defendant who testified on his own behalf, and made a closing argument in which he stressed those aspects of the evidence favorable to the defendant. In that argument, counsel sought to lessen the impact of various inculpatory statements which had been attributed to the defendant.

■■ After reviewing this record, we decline to characterize counsel's

representation as incompetent or defendant's trial as a sham, farce, or mockery.

For the foregoing reasons, we affirm defendant's convictions for murder, aggravated kidnaping, theft of property valued in excess of $150, and unlawful use of weapons.

Affirmed.

GREEN, P. J., and MILLS, J., concur.