THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD WOODRUFF, Defendant-Appellant.

Fourth District   No. 14654

Opinion filed August 11, 1978.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (John R. DeLaMar and Jeffrey B. Ford, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

Murder—jury—guilty—75 to 150 years—affirmed.

Woodruff was convicted of the murder of Richard Ogden, a used car salesman in Champaign, by blasting him in the back of the head with a sawed-off shotgun. Following the jury conviction, the trial court sentenced Woodruff to a term of 75 to 150 years, to be served *consecutively* to another murder sentence of 60 to 100 years imposed in DeWitt County.

The defendant, on appeal, does not challenge the *quantum* or the

sufficiency of the evidence produced at his trial, but rather only contends that three specific trial errors denied him a fair trial. Although he does not contest the evidence itself, we deem it appropriate to set forth at least a general outline of the facts behind this nefarious and gory slaying.

A fair synopsis of the facts indicates that on February 11, 1977, a 1973 silver and maroon Buick Century was stolen in Chicago at gunpoint by one Percy Jones, with defendant Woodruff present and acting as lookout. The weapon used was a sawed-off shotgun. Three days before the Ogden murder on February 15, both Woodruff and Jones were seen driving this same auto around Champaign. Shortly after Ogden's murder was discovered, two 1973 Oldsmobile Cutlasses were missing from the first row of the University Avenue Auto Sales lot in Champaign. Almost immediately one of the two Cutlasses (a light green one) was found about a block away and it had a license-applied-for sticker with Percy Jones' name and Richard Ogden's signature on it. Two days later, on February 17, a police officer in Peoria stopped the silver and maroon Buick which was being driven by Percy Jones. Jones was arrested, put in a paddy wagon, and on the paddy wagon floor the arresting officer found a motel key to a local motel room. Very shortly thereafter—only a few minutes— defendant Woodruff was seen by another police officer driving the missing Cutlass (a white-over-green). Woodruff drove into the motel and within a few moments was arrested. The silver and maroon Buick had a bullet hole in the front floorboard and a handgun that had been taken from the used car lot at the time of Ogden's murder was found in the Cutlass. A search of the motel room produced a .12-gauge sawed-off shotgun later identified as the murder weapon. Also, a car title made out to Percy Jones and signed by Richard Ogden was found in one of the stolen cars. The State very thoroughly and methodically connected the gun and the type of shotgun shell used in the murder to defendant Woodruff, as well as the proceeds of the crime, *i.e.*, the stolen Cutlass and the handgun from the used car lot.

The three procedural errors that defendant claims the trial court made which resulted in a denial of a fair trial are: (1) The granting of the State's motion *in limine* to exclude the testimony of cellmates and a jailer concerning statements made by Woodruff's co-defendant, Percy Jones; (2) the State's testimony of other crimes committed by the defendant; and (3) the allowance of "mug shots" of the defendant to go to the jury.

## Testimony of Cellmates and Jailer

A motion *in limine* was filed by the State to exclude testimony of certain cellmates of Percy Jones and that of one jailer where it was indicated that they would testify to certain incriminating statements made by Jones.

Although defense counsel acknowledged at the time of the motion that the statements were hearsay, he argued that they were within the exception to the rule as statements against penal interest.

In the written statements attached to the motion it appeared that one cellmate would testify that according to Percy Jones the defendant Woodruff was just a "tag along guy" in the shooting. He would also testify that Jones allegedly stated that the victim (Ogden) "broke and ran" before being shot. (It is noted, however, that this is in direct contradiction to the facts on trial which clearly showed that there was no back door in the office, that the victim was shot and killed in a small back room, and that his body had not been moved.)

Another cellmate would testify that Percy Jones stated that Woodruff really didn't know about the shooting and thought that Jones was actually in the used car lot buying a car.

Yet another cellmate said that Jones admitted killing Ogden after Woodruff "chickened out." And the statement of the jailer was that he overheard Jones say that he had killed two people and that it felt good. (Jones was also involved in a murder in Clinton, DeWitt County.)

The trial judge, in ruling on the motion *in limine*, found that the statements were indeed hearsay, and found that no compelling reason or circumstances required the admission of the statements since they were not reliable, were not closely related to the occurrence of the crime, and had no corroboration by evidence in the record.

The defendant rested without offering evidence.

Defense argues that although they were criminals, the cellmates were disinterested in the outcome of the Woodruff trial, that the statements by Jones were supported by independent evidence, that Jones' statements were self-incriminating (therefore increasing reliability), and that Jones was available for cross-examination. The State, on the other hand, argues that this case does not fall within the narrow exception to the hearsay exclusion, that Woodruff's guilt was overwhelming, and that the four factors of reliability grounded in case law were not present. The State says that the statements were not spontaneous or closely related in time to the occurrence of the crime, that they were not corroborated by evidence at the trial, that although the statements might have been against Jones' penal interest, the real question was whether the statements would be exculpating of *defendant's* participation and that Jones was unavailable for cross-examination because of fifth amendment problems since his trial had not yet occurred.

■■ ■ This issue is resolved by turning to *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, and our supreme court's opinion in *People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1. The general rule was restated in *Craven:* Third-party confessions which

exculpate the defendant at trial are generally inadmissible as hearsay. And the practicality of the rule is obvious since the introduction of perjured testimony of someone beyond the court's reach would seriously handicap the administration of justice, although the general rule will be departed from where it is "obvious" that justice requires such departure under "very compelling circumstances." In discussing the criteria spelled out in *Chambers*, our supreme court emphasized that the reliance on objective indicia of trustworthiness is the key to determining the admissibility under this narrow exception and that, for it to be trustworthy, there are four requirements: (1) The statement must have occurred shortly after the crime; (2) the statement must be corroborated by other evidence; (3) the statement must be self-incriminating and a declaration against interest; *and* (4) there must be an opportunity for cross-examination of the declarant.

■■ Defendant flunks the test. Jones' extrajudicial statements to his cellmates—and the statement overheard by the jailer—were neither spontaneous nor did they occur shortly after the crime took place. Other than being consistent with other statements made by Jones himself, the statements we are concerned with were in no way corroborated by other independent evidence, and—in fact—some of the statements were diametrically at odds with indisputable facts about the murder. Although Jones' confession of his involvement in the crime is probative and relevant, the murder here was a two-person crime and Jones' own self-incrimination in no way exculpates Woodruff. And since defendant fails to pass the first three parts of the test, we deem it unnecessary to prolong this decision by considering the fourth requirement of an opportunity for cross-examination. In short, we find no real basis to allow the admission of these jailhouse statements, and the trial judge was perfectly correct in his granting of the motion *in limine* and the exclusion of the statements.

## TESTIMONY OF OTHER CRIMES

Defendant next tells us that testimony relative to the theft of the 1973 silver and maroon Buick Century on February 11 in Chicago—four days before the shooting of Ogden—was improperly allowed in evidence.

■■■ The State argues, however—and quite correctly—that this issue was waived. At trial, defense counsel withdrew his objection to this testimony when he found out that defendant Woodruff was not physically involved in the theft of the auto, and such withdrawal waived the objection to the testimony. In addition, this issue was not even mentioned in defendant's post-trial motion. It has been stated numerous times that errors not objected to or in the post-trial motion are waived unless they amount to plain error. *People v. Lotts* (1977), 48 Ill. App. 3d 684, 362 N.E.2d 1387.

And can we say that plain error in fact occurred here? We are confident that we cannot. The general rule is that evidence of other offenses is inadmissible in a criminal proceeding, although there is an exception: When the otherwise inadmissible evidence goes to show motive, intent, identity, absence of mistake, or *modus operandi*. In such event, it is admissible as an exception. (*People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288.) It has also been stated by our supreme court that evidence of other offenses is admissible if it is relevant for any purpose *other* than to show the defendant's propensity to commit a crime. *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.

■■  Here, the State is clearly correct when it says that the evidence shows a knowledge on defendant Woodruff's part of the earlier theft of the Buick and a motive for the theft and murder in Champaign. Furthermore, the evidence involving the Chicago auto theft with a shotgun does form the only premurder indication that the shotgun used in Ogden's murder was in the possession of Percy Jones, found in the motel room. Consequently, the testimony was relevant for a purpose other than to show Woodruff's propensity to commit an offense and it was properly admitted on the question of motive and identity, *i.e.*, the shotgun and linking Woodruff to Jones.

*Ergo*, there was no plain error and this issue was waived.

### "MUG SHOTS" TO THE JURY

A folder containing eight mug shots—including defendant—were sent to the jury as Exhibit 28, and defendant argues that this was error since it inferred that Woodruff had a prior criminal history and that the photograph had no probative value. The State, on the other hand, contends that the exhibit did have probative value since there had been some confusion with one witness on whether he had immediately identified Percy Jones as the person seen with Woodruff and that the witness had only been shown the mug shots which did not have Jones' picture among them.

■■■  Although there was tape placed across all of the mug shots, or the booking information on each individual's chest was deleted, there can be no doubt in anyone's mind that a person of even subnormal intelligence would know that the front and side profile snapshots were all "mug shots" or photographs taken in connection with police investigation of criminal activities and prior arrests. It is unquestioned that it is error for mug shots from police files to be shown to a jury where they have no probative purpose. (*People v. Murdock* (1968), 39 Ill. 2d 553, 237 N.E.2d 442, *cert. denied* (1971), 404 U.S. 957, 30 L. Ed. 2d 274, 92 S. Ct. 324.) This court has been faced with the problem of photos going to the jury in *People v.*

*Bradley* (1976), 43 Ill. App. 3d 463, 468-69, 357 N.E.2d 696, 700, where we said:

"While the trial court attempted to avoid showing the jury the defendant's prior record by having all writing on the photographs excised, the mug shot itself still indicates a prior arrest of the defendant to anyone conversant with a post office wall. However, mug shots from which a defendant was identified may be admitted for the purpose of showing how the defendant could have been identified even though they indicate a prior arrest. (*People v. Smith* (1974), 20 Ill. App. 3d 756, 314 N.E.2d 543; *People v. Adams* (1974), 22 Ill. App. 3d 665, 318 N.E.2d 278.) Here, the pictures were not introduced for the purpose of showing a prior arrest but rather in response to the defendant's having raised the issue of the suggestiveness of the identification procedure during cross-examination. No error was involved in their admission."

We conclude here that the sending of the pictures to the jury did have probative value. One of the witnesses identified the defendant as Photo Number 2 of State's Exhibit 28 (the "mug shots") and her testimony went to the whereabouts of defendant Woodruff and Jones in the days prior to the shooting, and also went to the question of whether there was a third person involved or if Woodruff and Jones were together at all times. Therefore, we conclude that the probative value outweighs any negative inference and the jury's view of these photos was not erroneous.

Affirmed.

GREEN, P. J., and TRAPP, J., concur.