THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PERCY LEE JONES, Defendant-Appellant.

Fourth District  No. 14674

Opinion filed November 30, 1978.—Rehearing denied January 5, 1979.

CRAVEN, J., specially concurring.

Reino C. Lanto, Jr., of Waaler, Evans & Gordon, of Rantoul, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (John R. DeLaMar and Jeffrey B. Ford, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction upon jury verdict of the offense of murder. (Ill. Rev. Stat. 1975, ch. 38, par. 9—1.) A sentence of 75 to 150 years was imposed to be served consecutively to a sentence of 60 to 100 years as imposed upon conviction for murder at a different time and place. (*People v. Jones* (1978), 62 Ill. App. 3d 443, 379 N.E.2d 301.) Donald Woodruff, a co-defendant, tried separately, was also convicted for this murder and his conviction was affirmed. *People v. Woodruff* (1978), 62 Ill. App. 3d 949, 379 N.E.2d 907.

Upon appeal it is argued that the trial court erred in denying defendant's motion to suppress certain statements and a confession made by him; that the trial court erred in admitting testimony concerning another offense; that the trial court erred in permitting testimony of defendant's statements of the plan between defendant and Woodruff to shoot police officers to escape arrest; that the trial court erred in denying defendant's motion for a change in place of trial; that the trial court erred in denying defense counsel's request made prior to closing argument to examine the jurors concerning their possible media exposure; that the trial court erred in failing to *sua sponte* make inquiry during *voir dire* examination of the jurors concerning the specific details of matters which the jurors might have read or heard, and whether the court erred in giving an accountability instruction.

The victim, Richard Ogden, a salesman for a used car business in Champaign, was found shot to death in the inner office of the place of business. It was ascertained that his death was the result of a shotgun wound. Two used Oldsmobile Cutlass automobiles had been taken from the lot. One was subsequently discovered about a block away with a sticker on the window indicating license had been applied for in the name of the defendant, Percy Jones. The victim had signed the document.

On February 17, 1977, defendant was arrested in Peoria, Illinois, while driving a 1973 Buick reported as stolen. When defendant was placed in a van to be transported to the jail a key to a Peoria motel room was found. At the jail defendant without questioning stated that he and Woodruff each had rooms at the motel and indicated that they had chosen the rooms facing across the hall so that each could protect the other if the police called. Defendant also advised that if Woodruff would have been with him, one would have been in the back seat to shoot the officers who might stop them. Defendant accompanied the officers to the motel in an effort to point out the room occupied by Woodruff, but apparently Woodruff could not be found. A search of defendant's room revealed a shotgun under his pillow and six loaded shells hidden in a sock.

The Peoria police had been advised of the fact of the shooting in Champaign and of the attempt to locate Woodruff and Jones. Officers from Champaign arrived later in the evening and after a statement of the admonitions required in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, given upon several occasions and the taking of a signed waiver, defendant made a statement and confession concerning the shooting to the Champaign police which was recorded and subsequently transcribed.

Defendant, by motion, sought to suppress the statement and confession. No challenge is made concerning the sufficiency of the police admonitions as required by *Miranda*. Defendant testified concerning the

drinking of beer and wine, smoking marijuana and the taking of an animal tranquilizer on February 16, and that on February 17 he drank beer, smoked marijuana and took the tranquilizer called "Tac."

It was contended in the trial court and is argued here that the confession was not taken or obtained under an intelligent and voluntary waiver of defendant's rights because defendant had consumed such amounts of alcohol and drugs that he was unable to make an intelligent, voluntary waiver.

■■ The sole testimony concerning such intoxication is that of defendant. Seven police officers and an assistant State's Attorney from Champaign County testified to seeing and speaking with defendant from the time of the arrest at 6 p.m. until about 12:30 a.m., at which time defendant began to make the 1½-hour recorded statement. No witness observed either any confusion in manner of speech suggesting drug or alcohol intoxication, or any difficulty in walking or failure of coordination. Examination of defendant's statement as recorded and transcribed does not disclose any incoherent or confused language. We note that from defendant's own testimony he was able to drive through and around the city of Peoria for a period of two hours prior to his arrest without having any difficulty in driving by reason of intoxication. Defendant's handwriting appearing on the waiver suggests no appearance of intoxication. It was argued in the trial court, and here, that no one asked defendant whether he was intoxicated, or suggested that he·be given any test by breathalyzer or otherwise for intoxication. It does not appear how such inquiry or testing is called for in the absence of conduct which suggests the fact of intoxication. As a determination of the credibility of the witnesses, the conclusion of the trial court that defendant's statement was voluntary is not contrary to the manifest weight of the evidence. *People v. Moon* (1976), 38 Ill. App. 3d 854, 350 N.E.2d 179.

Defendant argues that the trial court erred in denying a motion *in limine* seeking to exclude the testimony of prosecution witnesses, Derrick Smith and Anthony Griffen. The Buick automobile used by the defendant was owned by Smith. He testified that on February 11, in Chicago, Jones came to Smith's car at a parking lot and that while seated in the car defendant produced a shotgun, that there was a struggle during the course of which the gun was discharged making a substantial hole in the floorboard of the car. Ballistic's testimony discloses that pellets and wadding from this shotgun were consistent with the wadding found in the body of the victim. Ballistic's testimony further discloses that the pellets and wadding from this shotgun were consistent with those found in the floor of the Buick.

Griffen substantially corroborated the testimony of Smith concerning the defendant's use of the gun and the taking of the car. In his initial statement to the police, defendant had stated that Smith had threatened

him with the shotgun, and that in a struggle he, the defendant, knocked the gun aside just prior to the time of its discharge. This would raise an inference that the gun belonged to Smith.

A number of witnesses for the prosecution testified to seeing defendant in the Buick automobile in the vicinity of the sales lot where the victim was shot. It appears that the arrest by the Peoria police was based upon the identification of the Buick as having been reported to be stolen.

■■ The testimony so identifying the gun is probative and relevant to the fact that defendant had possession and control of the weapon prior to the occasion of the shooting of the victim. Such evidence of defendant's possession and control is relevant in the light of the fact that at trial defendant undertook to testify that Woodruff did the actual killing and used the gun.

Defendant argues that even if the testimony is probative, the prosecution introduced unnecessary matter and detail concerning the taking of the Buick and the use of the shotgun, citing *United States v. Ostrowsky* (7th Cir. 1974), 501 F.2d 318. The testimony here does not have the scope and extent found in *Ostrowsky* as in that case the prosecution included *Ostrowsky's* statements as to reasons for killing the individual, and his instructions as to disposing of the body of the individual shot.

The trial court gave defendant's tendered instruction that such evidence was received for the limited purpose of identification.

Defendant argues that the prosecution should have permitted Smith and Griffen to only testify that they had seen defendant with the Buick automobile and had seen him with the shotgun. Such testimony would have been meaningless in the light of the issues of identification presented.

■■ We conclude that the testimony qualifies as an exception to the rule holding that evidence of different and unrelated crimes is not admissible upon the trial of defendant. It may be further said that in the light of defendant's confession and description of his own activities, and in the further light of the testimony that defendant had been overheard to tell an inmate of the jail that he had killed the victim, any error claimed is harmless beyond a reasonable doubt. *Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726; *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. McCasle* (1966), 35 Ill. 2d 552, 221 N.E.2d 227.

Defendant argues that it was error for the trial court to admit into evidence testimony disclosing defendant's statements to the arresting officers that defendant and Woodruff planned to resist and to shoot any police officer seeking to arrest them, and detailing other plans in arranging the motel rooms so that each would cover the other, or to have one of the two men crouch in the back seat of the automobile.

There is no challenge to the foundation that such statements were volunteered by defendant. We do not find such issue raised in the post-trial motion and as such it may be treated as waived.

■■ Defendant argues that such testimony is not admissible but should be treated as evidence of another crime. The testimony, of course, does not, in fact, show the commission of another crime. The testimony, however, is relevant as to relationship of defendant and Woodruff in the performance of the several acts in evidence. Such testimony may be deemed harmless beyond a reasonable doubt in the light of defendant's confession and his testimony as to being present at the office of the dead salesman for the purpose of obtaining the keys to the car and the license application. *Harrington, Chapman, McCasle.*

Defendant urges that the trial court erred in denying his motion for a change of the place of trial as provided in section 114—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—6). A hearing was had on the motion which was supported by affidavits. A series of clippings of news accounts were stipulated into evidence. In many instances the clippings were undated so that the time and flow of their publication cannot be ascertained. It appears that they were printed between February 1977, and the date of the trial in September. Many referred to the trial of the co-defendant, Woodruff, in another county upon charges of another murder. In denying the motion, the trial court advised that the motion might be renewed following *voir dire.* The motion was not renewed.

In *Irvin v. Dowd* (1961), 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639, and *Beck v. Washington* (1962), 369 U.S. 541, 8 L. Ed. 2d 98, 82 S. Ct.·955, it is stated that it is the duty of the reviewing court to independently evaluate the *voir dire* examination of the jurors. We find that the jury was chosen from a venire of 44 prospective jurors during the course of one day. The trial court conducted an initial examination of each juror sitting in a panel of four. He thereafter permitted counsel to conduct appropriate further examination of each juror.

The trial court excused nine jurors on *voir dire* for reasons not clearly related to opinions formed from news stories. Where the defendant inquired of the prospective jurors, one had been away and had not read any news account, one had read only headlines but not the accounts which followed, and of the remaining jurors of whom inquiry was made, each had no recollection of the details of what had been read.

The defendant exercised 10 challenges and had one peremptory challenge remaining. We find no instance where defendant attempted to exercise a challenge for cause which was denied. During the course of examination, defendant either expressly accepted the jurors or tendered the panel for further examination.

■■ Due process does not require that the jurors be totally unaware or

ignorant of the case. The test is whether or not a juror can put aside his impression or opinion and render a verdict upon the evidence heard in open court. *Irvin v. Dowd* (1961), 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639; *People v. Black* (1972), 52 Ill. 2d 544, 288 N.E.2d 376, *cert. denied* (1973), 411 U.S. 967, 36 L. Ed. 2d 689. See also Ill. Rev. Stat. 1977, ch. 38, par. 115—4.

To a degree, defendant concedes that this record shows no actual prejudice in the members of the jury, but urges that in "flagrant cases" the court will, or should, presume prejudice, citing *Sheppard v. Maxwell* (1966), 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507; *Estes v. Texas* (1965), 381 U.S. 532, 14 L. Ed. 2d 543, 85 S. Ct. 1628, and *Rideau v. Louisiana* (1963), 373 U.S. 723, 10 L. Ed. 2d 663, 83 S. Ct. 1417. Upon the facts presented here, it is not reasonable to conclude that this record discloses a flagrant case within the boundaries of fact shown in those cases.

In *Rideau*, videotapes purporting to show defendant confessing to the sheriff for a period of 20 minutes were televised upon three separate occasions prior to trial. In *Sheppard*, the court stated that it could not conclude that defendant was denied due process by reason of pretrial publicity alone, but that in conjunction with such publicity the trial was conducted in a "carnival atmosphere" of television and news photography in the court room, and the jurors were frequently portrayed on television and in news photographs. In effect, they became "celebrities" with the result that they were subjected to anonymous letters and telephone calls. Similarly, in *Estes*, the court found television and radio coverage within the court room created an unnatural environment for the jury trial which required a finding of a denial of due process. Nothing in this record suggests such a manner of conduct of a trial to the detriment and prejudice of the defendant.

Prior to the arguments of counsel closing the trial, defendant moved orally that the court question the members of the jury "to determine whether any of them have read any newspaper articles or been exposed to television or radio broadcasts concerning the case during the entire length of the case." No specific items of news or broadcast matter was presented to the trial court, and it was not suggested that any matter was published which had not been heard by the jury during the course of the trial. The trial court stated that he had admonished the jurors at each recess during the day, and at the close of court, and that he believed that the jurors responded seriously to such admonition; that he knew of no specific publicity of a prejudicial nature, and that if the case was deemed notorious, general questions directed to the jury might emphasize that notoriety.

Defendant refers us to the ABA Standards, Fair Trial and Free Press par. 3.5(f) (1974), where it is said:

"If it is determined that material disseminated during the trial goes beyond the record on which the case is to be submitted to the jury and raises serious questions of possible prejudice, the court may on its own motion or shall on motion of either party question each juror, out of the presence of the others, about his exposure to that material. * * *. The standard for excusing a juror who is challenged on the basis of such exposure shall be the same as the standard of acceptablility recommended in section 3.4(b) above, except that a juror who has seen or heard reports of potentially prejudicial material shall be excused if reference to the material in question at the trial itself would have required a mistrial to be declared."

Within the context of that Standard and the finding of the trial court that there was no specific matter of a prejudicial nature, this record does not disclose or suggest that the jury was exposed to any prejudicial matter contemplated in the language of that Standard.

■ Defendant argues that the trial court erred in giving an issues instruction which incorporated both the offense of murder as the principal, and upon the theory of accountability. He cites *People v. Lusietto* (1976), 41 Ill. App. 3d 205, 353 N.E.2d 385, as stating that it is improper to instruct upon the issues of accountability where the evidence establishes that defendant acted as a principal rather than an accessory. That opinion, citing *People v. Stark* (1966), 33 Ill. 2d 616, 213 N.E.2d 503, also states that it is correct to instruct the jury upon principal as well as accountability where the evidence supports both theories. A review of defendant's statement to the police which was read into the evidence, and defendant's testimony given at trial, discloses that the evidence supports the instruction incorporating both theories.

Defendant argues that the trial court erred in refusing to give his tendered instruction in the language of Illinois Pattern Instructions, Criminal, No. 3.06 (1968) (hereinafter IPI), concerning admissions. Defendant thereupon tendered IPI Criminal No. 3.07, concerning confessions. In the light of defendant's election in the giving of the latter instruction, the argument is without merit.

The conviction and sentence are affirmed.

Affirmed.

GREEN, P. J., concurs.

CRAVEN, J., concurs in the result reached but not with all that is said in the opinion.