THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY ALEXANDER WELCH, Defendant-Appellant.

(No. 53561;

First District—February 4, 1971.

Gerald W. Getty, Public Defender, of Chicago, (James J. Doherty, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (George Elsner, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant, Gregory Welch, was indicted for the murder of Connie Odom. In a non-jury trial, he was found guilty of aggravated battery and was sentenced to serve from two to ten years in the penitentiary. His contentions on appeal are: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the State failed to prove him guilty of aggravated battery, and (3) the offense of aggravated battery is not a lesser offense included within an indictment for murder.

Shortly after midnight on May 27, 1967, Odom was waiting for a bus at the corner of Chicago Avenue and Franklin Street, Chicago. An assailant, a young man wearing bell-bottom trousers, pulled Odom out of a doorway, threw him backwards to the sidewalk two times and then took him into an alley leading off Franklin Street.

An eyewitness to the assault, who was working in a shop across the street, called the police. The police arrived in force approximately ten seconds after the assailant and Odom had passed from the witness' sight, and he directed them into the alley.

The officers drove into the alley and saw Welch and Odom. One officer testified he saw Welch swing his right arm and strike Odom in the head. Odom fell to the ground. The second officer was intent on driving the car and first noticed Welch three or four feet away from Odom with his fist clenched over him. Odom was lying in the alley.

Odom's face was bruised, he was bleeding from the mouth and nose, and his hair was bloody. Welch was wearing bell-bottom trousers and a jacket with fresh bloodstains on one of the sleeves and pocket. He told the arresting officers that he heard Odom's calls for help and came to his aid. He blamed the crime on another person who had fled as the police car arrived.

Odom, a man in his sixties, was hospitalized for a brain concussion and other injuries sustained in the attack. Welch, eighteen years of age, was indicted for aggravated battery. After his discharge from the hospital Odom's personality changed and his health deteriorated. In August he became paralyzed on his right side and he died in September following surgery for the removal of a blood clot causing the paralysis. Welch was then indicted for murder and this is the charge upon which he was tried.

At the trial Welch denied attacking Odom. He testified that he was

returning home from a party when he heard Odom's cries for help and went to his aid. In contradiction to the testimony of a policeman who had testified that he was wearing a white T-shirt and a grey windbreaker, Welch said he had on a yellow T-shirt and a green jacket. He denied making statements to the police that he had seen someone else in the alley. He also stated that there were no police cars in the alley at the time of the arrest except the one belonging to the arresting officers. The blood on his clothing was explained by his testimony that he had taken Odom from behind and lifted him to his feet before the police came along.

The principal issue at the trial was whether the man in the alley was the same one who assaulted Odom on the street. The defendant asserts that he was connected to the crime only because he happened to be wearing the same type of trousers as the assailant. His contention that the State failed to prove beyond a reasonable doubt that he was the assailant is divided into (a) the insufficiency of the eyewitness' identification; (b) a police statement which influenced this identification and (c) the contradictions in the testimony of the prosecution's witnesses.

George Alter, the witness who saw the assault, identified Welch at the police station following his arrest and also at the trial. He testified that Welch was "definitely the man" he had observed on the street and that he recognized him by his general characteristics and the bell-bottom trousers. Alter said that from his view across the street he "figured" that the assailant was black, young and vigorous. On cross-examination he did not remember the color of the assailant's shirt or whether he wore a jacket. He said he doubted whether he would have been able to identify the accused if the arresting officers had not made a statement to a third policeman in his presence that the defendant was the man they caught in the alley. He also stated that he "surmised" that the assailant was the same man as the defendant.

One of the arresting officers testified that the jacket Welch was wearing at the time of his arrest had fresh blood on its right sleeve. The jacket, introduced into evidence, had bloodstains on its left sleeve. The officer identified the exhibit and said it was in the same condition as at the time of the arrest. The inventory made the date of the arrest showed bloodstains on the left sleeve.

The defendant's conviction does not rest upon the frailty of Alter's identification, and it is not impaired by the minor discrepancies in the officers' testimony. It does not matter whether Welch's T-shirt was white or yellow, his jacket grey or green, or whether the bloodstained sleeve was the right or left. These articles of clothing did not enter into his

identification and blood was admittedly on his jacket. The importance of Alter's testimony lies in what he saw, not in his identification. He saw Odom attacked, saw him twice thrown backwards upon the sidewalk and saw him taken into an alley by the assailant. During the assault he called the police. Police cars arrived seconds after the assailant and his victim went into the alley. Alter ran across the street and shouted, "In the alley, in the alley," to the nearest car and it swung east into the alley from Franklin Street. Alter's testimony established the attack and the whereabouts of the assailant.

The interval between the assailant's entering the alley and the arrival of the police was too brief for the captured man not to have been the assailant. There was neither time nor opportunity for a third person to have escaped. The area was lighted by mercury lights and visibility was good. One of the lights was in the alley, about 70 feet from Franklin Street. The narrow alley connected with another alley. The two formed an "L"-shaped passageway with one exit on Franklin Street and one on Institute Place—a street one-half block north of Chicago Avenue. Except for Odom and Welch, the alley was deserted. The arresting officers testified that no gangways or vacant lots adjoined the alley except one having a 12-foot fence, and that there was no way out of the alley except for the exits on Franklin Street and Institute Place. They also stated that police cars arrived at both exits within seconds of each other and that other police cars were stationed in the immediate vicinity.

██ The evidence of guilt is overwhelming. Welch was caught in the act of striking Odom immediately after a man answering his general description was seen attacking him on the street. The exits from the passageway formed by the alleys were blocked by police cars seconds after the assailant entered it. No one except Welch and Odom were in the passageway and Welch's clothing was stained with Odom's blood. In addition to this evidence there was further proof of guilt—the sworn testimony of Odom himself. Odom was a witness before the grand jury which indicted Welch for aggravated battery. By stipulation, his testimony was read into the record at Welch's trial. He informed the grand jury that the man who accosted him asked for money and he gave him a quarter. The man demanded paper money; when Odom said he had none he was knocked down and hit in the head with what felt like a piece of iron. Odom told the grand jury that the police officers caught the man "right there."

After Odom's death, Welch was re-indicted for murder. The evidence presented by the State tended to establish a causal connection between the brain concussion Odom suffered the night he was beaten and his

death. The trial judge, however, held that the medical evidence was insufficient. He found Welch not guilty of murder but guilty of the "lesser included offense * * * aggravated battery."

The defendant contends that the State failed to prove aggravated battery and cites a line of cases holding that no proof of commission of the offense was made by the State. The cases deal with situations where the cause of the injury was either unknown or speculative. They are not applicable here. The injuries inflicted on Odom were serious, they caused great bodily harm and their source was proven.

■■ The defendant also requests the reversal of his conviction on the ground that an indictment for murder does not include the offense of aggravated battery. The principal argument is that aggravated battery requires a higher degree of mental culpability than does a murder resulting from the commission of a forcible felony and, therefore, all the elements of the former offense are not contained in the latter. This argument is predicated on the supposition that Welch was indicted and tried only for murder arising from a forcible felony and that death resulting from such a felony is unintentional. In a felony murder the killing may be intentional or accidental. If it is accidental, the law presumes the intent to kill from the intent to commit the forcible felony. The mental state required for aggravated battery is "intentionally or knowingly" causing great bodily harm, permanent disability or disfigurement. (Ill. Rev. Stat. 1965, ch. 38, par. 12—4(a).) The requisite mental state for this offense does not differ from that required under the murder indictment: the intent to do the act. The indictment was in three counts. The first charged that Welch intentionally and knowingly killed Odom (par. 9—1(a)(1)); the second that he struck and killed Odom, knowing that such striking created a strong probability of death or great bodily harm (par. 9—1(a)(2)); the third count charged that in attempting to commit a forcible felony—robbery—he intentionally and knowingly struck and killed Odom (par. 9—1(a)(3). Ill. Rev. Stat. 1965, ch. 38, pars. 9—1(a)(1), 9—1(a)(2), 9—1(a)(3).

■■ An included offense "is established by proof of the same or less than all the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged * * *." (Ill. Rev. Stat. 1965, ch. 38, par. 2—9.) To permit conviction for a lesser offense on an indictment charging only a greater offense, all the elements of the lesser offense must be included within the greater. (*People v. King* (1966), 34 Ill.2d 199, 215 N.E.2d 223.) The elements of aggravated battery and murder are substantially the same with the exception that in one the victim is injured seriously and in the other he dies as a result of his injuries. The proof in the present case established

all the elements necessary for aggravated battery and less than all the elements necessary for murder.

■■ It has been held, under prior statutes, that the offense of assault and battery was encompassed within the charge of murder. (*People v. Dugas* (1923), 310 Ill. 291, 141 N.E. 769.) The same principle obtains in reference to aggravated battery under the statutes in effect at the time this case was tried.

The judgment is affirmed.

Judgment affirmed.

McNAMARA, P. J., and SCHWARTZ, J., concur.