THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARLIN JEFFERSON, Defendant-Appellant.

First District (1st Division)   No. 77-177

Opinion filed September 11, 1978.

James J. Doherty, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Marlin Jefferson was found guilty of burglary by a jury in the circuit court of Cook County and was sentenced by the court to imprisonment for from three to nine years. On appeal, defendant argues that he did not have a fair trial because (1) the prosecution failed to disclose a pretrial statement of a witness which allegedly was favorable to the defense, (2) the court improperly restricted cross-examination of this same witness concerning whether anything was missing from the premises where defendant was arrested, and (3) the prosecutor's closing argument improperly described the legal effect of defendant's prior convictions on his credibility.

Two witnesses testified on behalf of the State, the owner of the restaurant in which defendant was found and one of the arresting police officers. Sam Ariola, the owner of the restaurant located at Grand and River Road, River Grove, Illinois, testified that at about 1 a.m. on the day in question he had closed the restaurant for the night and locked all the doors, and then went home to his house located three blocks away. Shortly after 2 a.m. he received a telephone call and returned to the restaurant, where he saw police vehicles and policemen present. He entered the building and observed that the glass in the rear door had been broken, then proceeded to a porch off the kitchen where he saw the police pulling the defendant out from under a bench. Another person was also arrested. Ariola had never seen the defendant before that night and had never given him permission to enter the premises. The door with the broken glass had had its lock broken and the latch on the back door had been pulled apart and broken. The doors had been intact and no one was in the restaurant when Ariola had locked it up at 1 a.m. The cash register, which had been closed when he left, was open when he arrived. On cross-examination, Ariola was questioned about the lighting in and around the restaurant at the time he closed. He had recently installed floodlights in the parking lot, but he testified that they were turned off. He thought that there might have been street lights on River Road which illuminated the outside. He had left on the lights over the bar and a large fluorescent light in the kitchen when he closed, as he always did. The bar lights illuminated the dining room sufficiently "so that one can see where he is going."

Defense counsel twice asked Ariola whether he had determined if anything was missing, and both times the State's objection as to relevance was sustained.

Officer Margaret Dellinger of the River Grove police department testified that she and her partner responded to a radio flash message and arrived at the restaurant. They parked their car at the south end of the building. She exited the car, saw a car in the alley behind the restaurant, and saw the door of the restaurant open toward her, then close. She approached the building and noted that the glass in the door had been broken. Looking through the window, she saw the defendant inside the building. He stood behind the bar, then crouched down and ran to the back of the interior of the building, where she saw him arrested. On cross-examination, Officer Dellinger testified that she had observed the defendant initially through the plate glass window in front of the building, and that the interior was so well lighted at that time that she was able to observe defendant's features distinctly.

The State rested and the defendant's motion for a directed finding was denied.

The defendant testified that on the evening before his arrest he had been picked up at his home, on south Racine Avenue in Chicago, by his friend Michael Stuckley, who drove him to a party in Oak Park. They arrived at about 11:30 p.m. Defendant, Michael Stuckley and another Michael left the party to go home; the defendant rode in a car driven by the other Michael, and Michael Stuckley followed in the car he had been driving. They had stopped at a light when defendant noticed a restaurant and told the driver to pull in so they could get something to eat. The driver parked in the parking lot, and defendant got out of the car and walked into the restaurant through the door, which was closed but not locked. Michael Stuckley followed him in. The restaurant was well lighted by lights over the bar and in the kitchen, and by candles lit on several of the tables. Defendant had entered the dining room and walked toward the bar. The defendant testified that he called out, "Is anyone here?" because "It was looking condemned like, you know, it was real quiet." There was no answer. He walked back to the door, opened it and saw a police officer getting out of a police car. He closed the door and said, "Oh, hell" because "We in the place, me and somebody else, and we the only two in there, and nobody else in there, and the only thing is coming through my mind, who is going to believe me." He testified that he told Stuckley that the police were there and started walking towards the back of the kitchen to see if he could get out the back door, but the police came in. He and Stuckley hid in a "dark spot" on the porch, but the police arrested him.

Defendant testified that he had only entered the restaurant to obtain

food, and that theft "was the farthest out of my mind." He told this to the police that night. He thought the restaurant was open, not closed, because the lights were on. He had been inside about three minutes when the police arrived. The other Michael and his car were gone when he came out with the police.

On cross-examination, defendant testified that he had lived in Chicago most of his life and had never been in River Grove before. He had been in Oak Park many times, but never before at the house where the party had been, and he did not remember its address. The party had been a homecoming celebration for defendant's recent release from the penitentiary. Defendant had had a lot to drink and was "nodding off" in the car. He left the party at about 1:15 a.m. and was supposed to be going home, which would be east of Oak Park, but they went west to enter the "Congress highway." But they never got on the expressway because they became lost and wound up in River Grove. He was riding in the other Michael's car. He had known this other Michael for a long time and had "grown up with him," but defendant did not know his last name. The defendant testified that he was riding with this Michael because Michael Stuckley, with whom defendant had arrived at the party, was driving a stolen car. The driver took mostly side streets, but defendant did not pay attention to their route because he thought the driver knew where he was going.

Defendant stated that the parking lot was dark and its lights were off when they arrived at the restaurant. Their car was the only one in the lot. He saw no waitress or bartender or any customers when he entered, and he didn't notice anything unusual except the absence of people. He denied that he crawled or creeped when the police officer saw him. The defendant stated that he had not seen any doors, windows or locks damaged when he went in. He admitted that he had been convicted of a felony in Illinois.

The defendant testified on redirect examination that he did step on broken glass on the floor when he first entered the door. He had gone into the back of the restaurant to attempt to leave by the back door, but he could not push the latch off.

By stipulation, the fact of defendant's prior convictions on guilty pleas to two felony theft charges was read to the jury.

The jury returned a verdict of guilty on the burglary charge. Defendant filed a post-trial motion for new trial, supported by the affidavit of defense counsel. Among the grounds listed in the motion were that the trial court impermissibly restricted cross-examination of Sam Ariola on whether anything had been found missing from the restaurant, and that the prosecutor had failed to comply with the defense's discovery request to disclose information favorable to the defense. The affidavit of defense

counsel alleged that the theory of the defense was that there had been a burglary of the restaurant prior to defendant's innocent entry. It was further alleged that, when defendant and his companion were arrested, nothing was in their possession which could have been property of the owner. The affidavit stated that although defense counsel had been prevented, by the court's ruling on the State's objections, from asking Ariola whether anything was missing, Ariola had told defense counsel, off the record and off of the witness stand, that nothing had been taken. The affidavit also stated that defense counsel was told by one of the assistant State's attorneys trying the case, in private during jury deliberations, that Ariola had told him $75 was missing. The State did not dispute the factual allegations in the affidavit at the hearing. The court, after hearing arguments, denied the motion and sentenced defendant.

■■ It is well established that the prosecution is obligated to reveal to an accused any information in its possession or control which is material and tends either to negate guilt or mitigate punishment. (*Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; Supreme Court Rule 412(c) (58 Ill. 2d, Rule 412(c).) Defendant's pretrial discovery motion, *inter alia*, requested:

> "That the prosecution disclose to the defense the names and addresses of any witness or witnesses that may be or would be favorable to the defense. These witnesses to be clearly and separately identified on the List of Witnesses."

In response to the discovery motion, the State did list Sam Ariola as a potential witness, but did not identify him as a person having information favorable to the defense.

■■ ■ We think it is clear that the request for disclosure of favorable information was a general one, since it in no way gave notice of what the defendant's theory of defense was to be. It did not ask for any information tending to show a prior burglary, for instance; nor did it request a revelation of whether anything was discovered to be missing from the restaurant. Under these circumstances, non-disclosure of the allegedly material evidence is cause for reversal only when, evaluated in the context of the entire record, the omitted evidence creates a reasonable doubt that did not otherwise exist. (*United States v. Agurs* (1976), 427 U.S. 97, 112, 49 L. Ed. 2d 342, 354, 96 S. Ct. 2392, 2401.) "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." 427 U.S. 97, 109-10, 49 L. Ed. 2d 342, 353, 96 S. Ct. 2392, 2400.

Under this standard, was the information, that Ariola had reported $75 as missing, material as tending to show defendant's innocence, such that,

when viewed in light of the entire record, it raises a reasonable doubt of his guilt? We think not.

■■■ The material elements of burglary are entry into or remaining in a building, without authority, with intent to commit therein a felony or a theft. (Ill. Rev. Stat. 1975, ch. 38, par. 19—1.) It is not required to prove that a felony or theft was actually committed (*People v. Cokley* (1977), 45 Ill. App. 3d 888, 360 N.E.2d 545), and proof that no property was taken is no defense, where intent to commit theft is properly established. (*People v. Gooch* (1966), 70 Ill. App. 2d 124, 217 N.E.2d 523.) Intent can be inferred from the facts and circumstances in evidence. (*Cokley.*) Here, where defendant was arrested inside the premises, which had been broken into, and was seen behind the bar before he attempted to conceal himself in the dark back room, and had not been given authority by the owner to be there, sufficient evidence was presented to make the issue of intent a jury question. *People v. Durham* (1965), 66 Ill. App. 2d 163, 212 N.E.2d 765.

We do not believe that if Ariola had reported $75 as missing, or nothing as missing, or had inconsistently made both reports, then a reasonable doubt of defendant's guilt would be created. An inconsistency would not weaken his testimony of ownership of the premises and his denial of giving authority to defendant to enter. The other facts Ariola's testimony established were testified to by the police officer, who saw defendant inside the restaurant trying to conceal himself. The question of whether Ariola reported anything to be missing was simply not in issue and was immaterial to defendant's guilt of burglary.

Defendant urges that it was material to his innocence, however. His testimony and argument at trial was to the effect that, if there was a burglary and property were taken, it had already occurred and the perpetrator had fled before defendant arrived and innocently entered the premises to get something to eat. He argues that, if in fact Ariola reported $75 as missing and the police reports revealed that defendant and his companion had only $20 in their possession at the time of their arrest, this tends to show that he did not take the missing money and he did not have the intent to commit theft when he entered. Defendant cites *People v. Murdock* (1968), 39 Ill. 2d 553, 237 N.E.2d 442, in which the defendant's convictions for rape, murder and burglary were reversed for failure of the State to reveal to defendant that there was evidence that the front door was not locked sometime prior to the discovery of the body. Murdock had admitted the burglary, but defended against the other charges on the theory that someone else, either before or after defendant's entry through a window to steal, had come in through the door and raped and murdered the victim. The court held this nondisclosure to be material and a denial

of due process. *Murdock* is not applicable here, in our opinion, because the issues are different. The defendant in *Murdock* admitted his burglary; the defendant here denied intent to steal. The case against Murdock for rape and murder was circumstantial; here, defendant was arrested in the premises. And in *Murdock*, the fact that the door was open showed that someone else had the opportunity to enter and commit the crimes. In the instant case, even if it had been established that there had been a prior burglary, this would not negate the potential for someone else, such as the defendant, to afterwards enter without authority and with intent to commit a felony or theft. A person may be the victim of a murder only once, but a building may be burglarized any number of times. Therefore, we do not believe that the withheld information was material to proof of defendant's innocence.

■■ Defendant's second argument, that his cross-examination of Ariola was improperly restricted because he was prevented from inquiring whether anything was missing from the premises, is also without merit. As we have concluded above, proof of missing property is not an element of burglary, and the prosecutor did not open the door to this area on direct examination of Ariola. The scope of cross-examination is committed to the sound discretion of the trial judge, whose restrictions will not be reversed except in a case of clear abuse of discretion. (*People v. Ciconte* (1975), 32 Ill. App. 3d 374, 336 N.E.2d 260.) Here, the testimony sought of the witness was neither critical nor did it tend to prove defendant's innocence of burglary. (*People v. Hanks* (1974), 17 Ill. App. 3d 633, 307 N.E.2d 638.) The court did not abuse his discretion.

■■ Finally, defendant argues that remarks made by the prosecutor during closing argument were prejudicial and deprived him of a fair trial, because the effect of defendant's prior convictions on his credibility was misstated. However, no defense objection was made during the argument and this contention was not raised in the written post-trial motion. It was, therefore, waived and we shall not consider it. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Furthermore, we have read the transcript of the closing argument and do not find the portions complained of, when taken in context, to be misleading or unfair under the facts. And finally, the court, after arguments, correctly instructed the jury that "You should judge the testimony of the defendant in the same manner as you judge the testimony of any other witness." Illinois Pattern Jury Instructions, Criminal, No. 1.02.

Therefore, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.