THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT HINE, a/k/a Robert E. Hines, Defendant-Appellant.

First District (3rd Division)    No. 79-509

Opinion filed September 24, 1980.

James J. Doherty, Public Defender, of Chicago (Nancy Joslyn and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Edward M. Rubin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

■■ The reciprocal rules of discovery in criminal cases require the disclosure to the accused of those persons whom the prosecutor intends to call as witnesses. The critical element is the prosecutor's intent, and until the prosecutor forms the intent to call a person as a witness there need be no disclosure, no matter how critical that person's testimony is. Defendant's conviction, obtained partly on the strength of testimony from a rebuttal witness whose identity was not disclosed before trial, must be affirmed.

In the early evening of December 26, 1977, Robert Hines was stopped by police for carrying a cardboard box in an alley behind a building belonging to the Johnson Publishing Company. The box contained magazines and books published by Johnson; the box itself carried the name of one of Johnson's book clubs. Hines told police that he took the box from the company's loading dock, which was situated just a few feet from where he was arrested.

Hines was held at the scene while two of the officers went to the front of the Johnson building. A two-story complex actually consisting of four interconnected buildings, it was being used as a warehouse for magazines and novels published by Johnson. At the time of the burglary, plans called for the building to be razed, and by the time of trial it had been destroyed. The officers found that, although the windows had been boarded up, one ground level board was loose. An officer crawled through the hole into the building. Inside, he found books similar to those in defendant's box.

Hines was taken to a police station. He told one of the officers that the

security guard was involved in the incident. After being advised of his rights and questioned, Hines said that "he had gone in through the window, gotten the books and his intention was to sell them on the street for anything he could get for them." When asked about the security guard, the defendant brushed away the question by saying, "Man, forget it."

At trial the arresting officers testified and related the defendant's statements. One officer recounted how he beat on the outside door next to the loosened window board for 5 or 6 minutes before the security guard let him in. The State presented the testimony of Johnson's director of security. He testified that Johnson was a duly licensed Illinois corporation. He said that the building involved was owned by Johnson, that he did not give permission to the defendant to enter it and that it was company policy that security guards not give permission to anyone to enter company buildings except for company officials. The building was not open to the public.

After a motion for a directed verdict at the end of the State's case in chief was denied, the defendant testified that he picked the books up from the trash area next to the loading dock. Hines admitted that he was a thief, noting his convictions for robbery in 1965, for burglary in 1970, for attempt theft in 1976 and for theft in 1977, but said that a third party had called him on the day he took the books and told him that the security guard would set them out for Hines.

The defendant testified that when first arrested he told police that he took the books from the trash area behind the loading dock. He denied indicating to police that he had entered the building, but said that an officer threatened to charge him with burglary unless he named the security guard who set out the books for him. It was at that point that Hines told police to "forget it." The defendant refused to name the guard who telephoned him or the guard who set out books for him because it would be unethical.

After Hines' testimony the State asked leave to call Albert Downing, security guard at the Johnson building at the time of the defendant's arrest. The trial court allowed Downing to testify, ruling that he was a rebuttal witness and that there was no reason for the prosecutor to anticipate his being a witness until he heard the defendant's testimony. Downing testified that no one entered the building as far as he knew. He had never seen Hines before the trial, did not give him permission to enter the Johnson building, did not have a third party contact Hines, heard nothing at the time of Hines' arrest and learned about a break-in only when informed by police.

The defendant returned to the stand to testify that several months before the incident for which he was on trial, Downing had chased him away from the loading dock when Hines tried to pick up books set out for him by another security guard. The defendant said that he did not personally know who was behind the taking of books. He had no direct dealings

with the security guards, but instead picked up the books after they were placed on the dock.

■■ The jury found Hines guilty of burglary. He was sentenced to a fixed term of 5 years imprisonment. The defendant argues on appeal that the State should have disclosed Albert Downing's name and address to him before trial. The defense discovery request asked for the name of all occurrence witnesses and for a list of any other witnesses whom the State might or might not call at trial. The request sought more information than the supreme court rules required the State to furnish. Under Rule 412, the State must disclose the identity only of those persons whom it intends to call as witnesses. (Ill. Rev. Stat. 1977, ch. 110A, par. 412(a)(i).) Where rebuttal witnesses are concerned, the State need not inform the defendant until the intent to call the rebuttal witness is formed. (*People v. Stinson* (1976), 37 Ill. App. 3d 229, 234, 345 N.E.2d 751, 755; *People v. Manley* (1974), 19 Ill. App. 3d 365, 371, 311 N.E.2d 593, 598.) The reason is simple. Although the prosecutor may know the import of a rebuttal witness' testimony before the trial, he cannot know if the witness will be used until he receives some indication from the defendant as to the defense that will be advanced at trial. Only when the State learns what the defense testimony will be can it decide whether to put on rebuttal witnesses and who they should be. *Stinson*, at 234.

Here, since there was no notice of alibi defense, the State had to wait for the defendant's testimony to determine if Downing would be used. Rule 412(a)(i) thus did not require Downing's disclosure. The trial judge had the discretion to require Downing's disclosure under the catchall provisions of Rule 412(h) (Ill. Rev. Stat. 1977, ch. 110A, par. 412(h)), but we find no abuse of discretion in his decision not to require that disclosure before the trial commenced.

Defendant also argues that the total evidence does not prove him guilty beyond a reasonable doubt. The material elements of this burglary were entry to a building without authority and with intent to commit a theft (*People v. Jefferson* (1978), 64 Ill. App. 3d 200, 205, 380 N.E.2d 1070, 1074).

Proof of the entry rested, as the State admitted in argument before the trial court, on the defendant's statement. Hines argues that his testimony denying entry raised a reasonable doubt of guilt, but it was up to the jury to choose between the State's and the defendant's versions and determine the truth. Where the State's evidence was adequate to support the verdict the jury's determination will not be disturbed on appeal. *People v. Price* (1979), 79 Ill. App. 3d 1112, 1118, 398 N.E.2d 1158, 1161; *People v. Baker* (1979), 78 Ill. App. 3d 411, 417, 396 N.E.2d 1174, 1180.

Proof that the defendant lacked authority for entry came both circumstantially, from the director of security's testimony that it was a policy that

persons like Hines not be given authority to enter, and directly, in the testimony of the security guard who had direct custodial responsibility for the premises. (See *People v. Jordan* (1971), 3 Ill. App. 3d 61, 63, 278 N.E.2d 444, 446.) The security guard's testimony was proper rebuttal to Hines' testimony that he obtained the books through the collaboration of the security guard on duty, and discloses on appeal that there is no reasonable doubt that the defendant entered the building without authority. As for the defendant's intent to commit theft, he himself admitted that he did not think he was buying the books when he obtained them from Johnson.

■■■ The defendant also contends that since the State's position was that the building was owned by a corporation, it was incumbent upon the State to prove the corporate existence of the owner and that the State failed to do so adequately. Where, as in this case, the defendant raises no objection to the method of proof, the State may prove the corporate existence of the owner of premises by oral testimony. (*People v. McGuire* (1966), 35 Ill. 2d 219, 232, 220 N.E.2d 447, 456; *People v. Panczko* (1943), 381 Ill. 625, 628, 46 N.E.2d 28, 30; *People v. Meeks* (1978), 59 Ill. App. 3d 521, 530, 375 N.E.2d 1001, 1008.) The director of security's testimony that Johnson was an Illinois corporation adequately proved this element. There is no reasonable doubt of the defendant's guilt.

■■■ Defendant's remaining contentions have no merit. He suggests that the trial court erred in admitting Hines' 1966 robbery conviction. Generally, a prior conviction may be used for impeachment purposes if it has been less than 10 years since the defendant's release from the penitentiary and the prejudicial effect of the evidence does not outweigh the probative value. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 516-17, 268 N.E.2d 695, 698-99.) Hines' release on the robbery conviction came in 1969, and so the 10-year rule was satisfied. The trial judge weighed the value of the evidence against its effect, and we cannot say that his determination was an abuse of discretion.

The defendant suggests that the trial court admitted the robbery conviction substantively to show guilt by *modus operandi*. (See *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489, 492.) The record discloses that the trial judge was concerned with the defendant's habit of committing crimes which involve dishonesty—a consideration specifically mentioned in *Montgomery*. The trial judge allowed the convictions to be used to impeach the defendant, and there is no reason to alter his ruling.

■■ Finally, the defendant complains about the prosecutor's remarks in closing argument. While referring to the defendant's refusal to name the security guard who he claimed had aided him, the prosecutor commented, "* * * he said, forget it. Forget it because there wasn't any security guard involved. What other way could the defendant find to explain away —." An objection by the defendant was sustained. The prosecutor continued,

"What other way, what else could he say?" A second objection was overruled. Defendant claims that the prosecutor implied that Hines had to explain himself. This was not a comment on the defendant's silence nor an effort to switch the burden of proof. It was a legitimate attempt to point out the holes in the defendant's story by stating that the defendant could not say he had entered the building without authority without risking a burglary charge. As an argument pointing out the bias of the person who made the statement, it was permissible.

■■ The prosecutor also asked the jury what point there was in dusting for fingerprints when a man is caught with the proceeds of a crime. Defendant urges that this was an attempt to tell the jury that nothing more than the defendant's admission of entry was needed to establish entry. As an argument on the sufficiency of the evidence it was proper, and the decision to overrule the objection was not error.

Judgment affirmed.

McGILLICUDDY, P. J., and RIZZI, J., concur.