THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL BALLS, Defendant-Appellant.

First District (3rd Division)    No. 79-739

Opinion filed March 31, 1981.

Lawrence Wolf Levin and Steven R. Decker, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Defendant, Michael Balls, was found guilty of the murder of Delores Silvestri in a jury trial. He was sentenced to a term of 150 to 300 years' imprisonment. We affirm.

At approximately 10:40 a.m. on November 30, 1976, a Chicago police officer went to the 13th floor of the Pittsfield Building in Chicago, Illinois, and found the body of Delores Silvestri lying in a large pool of blood. He noticed a purse and a metal clasp in a pool of blood in a stairwell which was a few feet away from the body. There was also a large butcher knife on the stairway.

At about the same time, another police officer went to the third-floor washroom of the Pittsfield Building and observed defendant wiping his hands on a towel rack, the back of which was covered with blood. The front of defendant's trench coat was also covered with blood. Defendant appeared very nervous at the time. The officer looked in one of the commodes and saw tissue with blood on it. After making these observations, the officer placed defendant under arrest, and defendant was transported to the police station. A scarf and gloves which had blood on them were subsequently recovered from the third floor washroom.

Another police officer arrived at the Pittsfield Building at approximately 11 a.m. After observing the victim on the 13th floor, he went to the third floor where he saw Al Silvestri, the husband of the victim. The officer then proceeded to the police station, where he spoke to defendant in an interview room. Defendant told him that he was at the Pittsfield Building to see a dentist. He denied having knowledge of the stabbing and said that he did not know how the blood had gotten on his clothing. The officer left the room.

The officer later returned to the interview room and informed defendant of certain statements Al Silvestri had made. Silvestri said that defendant had been extorting money from him and that he had threatened Silvestri's wife on the previous evening. Silvestri also stated that defendant threatened him and his wife while they were walking to the Pittsfield Building that day. At this point, defendant told the officer that he wanted to tell the truth.

According to defendant, he had known Silvestri for a long time because Silvestri owned a tavern in his neighborhood. Two months prior to the murder, Silvestri offered defendant $1500 to kill his wife. Silvestri

told defendant that his wife discovered he was having affairs with other women, and she would not give him enough money to continue these affairs. He also mentioned that his wife threatened to have him deported. Defendant agreed to kill Silvestri's wife. Silvestri gave defendant a photograph of his wife and arranged to have defendant see his wife during one of her weekly visits to the Pittsfield Building.

Defendant explained to the officer that on the night before the murder, he and Silvestri had agreed that the killing would take place on the following day. Silvestri gave defendant an appointment card for a dentist in the Pittsfield Building and told defendant to tell any police officer who might stop him that he was going to see a dentist. Silvestri said that he would instruct his wife to meet him on the 13th floor where they would see a man who would sell them a painting at a reduced price. Silvestri said that he would wait in the lobby while defendant was waiting for his wife on the 13th floor.

At approximately 9:30 a.m. on November 30, 1976, defendant met Silvestri at a restaurant, and they proceeded to the Pittsfield Building. Upon arrival, they went to the 14th floor, and Silvestri showed defendant the office of his wife's doctor. Silvestri then showed defendant the stairwell in which he was to wait. Silvestri and defendant returned to the lobby. Shortly thereafter, Silvestri left, and defendant returned to the 14th floor and entered the stairwell.

According to defendant, at approximately 10:30 a.m., the victim entered the stairwell, and defendant stabbed and killed her with a butcher knife. Defendant told the officer that he "stabbed her once, good in the back," but the officer did not recall if defendant said that he stabbed her more than once. After dropping the knife on the landing, defendant ran down the stairwell to the lobby. When he saw police officers in the lobby, he ran to the third floor and entered the washroom. He took off his scarf and gloves and threw them down. He then tried to wash the blood off his clothing with tissue and a towel hanging on the wall. At this time, some police officers entered and arrested him. The officer to whom defendant gave the above statement later obtained a photograph of the victim from defendant's wife.

■■ Later, defendant gave a written statement to an Assistant State's Attorney. This statement was substantially the same as the statement given to the police officer. In this statement, defendant stated that he stabbed the victim once in the side. He also said he was wearing gloves with buckles.

A pathologist testified that the victim had over 30 external stab wounds. It was his opinion that the cause of death was a stab wound of the face and neck which lacerated the right internal jugular vein and the larynx. A microanalyst from the Chicago Police Department testified that

defendant's coat, suit jacket, trousers, shirt, vest and tie contained blood of the victim's type. Blood of the victim's type was also found on the towel, tissue, scarf and gloves removed from the third-floor washroom.

Defendant first argues that he was prevented from developing his theory of the case. Defendant's theory was that he was not responsible for the death of the victim because he only stabbed her once in the side. Defendant maintained that someone else, namely Al Silvestri, inflicted all other wounds, including the fatal wound of the face and neck. Thus, defendant concludes, he could only be guilty of aggravated battery.

In support of his argument that he was prevented from developing his defense, defendant lists several rulings on the State's motions in limine which were adverse to him. These rulings include a ruling preventing a police officer from testifying on cross-examination as to his investigation of Silvestri and as to some statements made by Silvestri during a conversation between the officer and Silvestri; a ruling preventing an Assistant State's Attorney from testifying on cross-examination as to a conversation with or investigation of Silvestri, or as to whether charges were approved against Silvestri; a ruling precluding defendant from introducing testimony to show that he had attempted to serve Silvestri but was unable to locate him; a ruling preventing defendant from presenting testimony of two men whom Silvestri had also approached about killing his wife; a ruling preventing a police officer and an Assistant State's Attorney from testifying on direct examination as to any investigation of Silvestri; and a ruling preventing the receptionist from the victim's doctor's office from answering a question relating to a conversation she had with Silvestri on the day of the murder. Defendant does not make any argument or list any citations as to why any of these rulings were erroneous. Rather, he merely lists the rulings and concludes that these rulings severely limited him in presenting his theory. Much of the testimony which defendant claims should have been admitted was beyond the scope of direct examination or was irrelevant to the case at hand. We conclude that defendant was not denied his right to present his theory of defense.

Defense next contends that instructions relating to battery and aggravated battery should have been given. He argues that there was evidence that he was not responsible for the murder of the victim. He maintains that if the jury had believed his theory of the case, he would only have been found guilty of aggravated battery.

■■ We conclude that the tendered instructions on battery and aggravated battery were properly refused because the evidence did not justify the submission of these instructions. Although battery and aggravated battery may be included offenses of murder (*People v. Lyons* (1974), 26 Ill. App. 3d 193, 198-99, 324 N.E.2d 677, 681; *People v. Welch* (1971), 131 Ill. App.

2d 98, 102-03, 268 N.E.2d 242, 245), in order to give an instruction on an included offense, the evidence must be sufficient to permit a finding of not guilty on the greater offense but guilty on the included offense (see *People v. Pokosa* (1930), 342 Ill. 404, 411, 174 N.E. 544, 546; *People v. Johnson* (1975), 32 Ill. App. 3d 36, 47-48, 335 N.E.2d 144, 154-55). In the present case, the evidence would not support a finding of not guilty on the murder charge but guilty on the included offense of aggravated battery. Thus, the trial court correctly refused to give instructions on battery and aggravated battery.

■■ Defendant next claims that the trial court erred in submitting an instruction on accountability. If either before or during the commission of an offense, and with the intent to promote or facilitate such commission, a person solicits, aids, abets, agrees or attempts to aid another person in the planning or commission of the offense, he is legally accountable for the conduct of such other person. (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).) Here, under defendant's theory, there was an agreement between defendant and Silvestri to kill Silvestri's wife. At the very least, defendant aided in the commission of the offense of murder by admittedly stabbing her once in the side. The possibility that Silvestri may have completed the offense does not absolve defendant. Where persons have a common design to do an unlawful act, any act by one of them in furtherance of the common design is the act of all, and all are guilty of the crime committed. (*People v. Martin* (1977), 46 Ill. App. 3d 943, 956, 361 N.E.2d 595, 604; *People v. Gregory* (1976), 43 Ill. App. 3d 1052, 1056, 357 N.E.2d 1251, 1254.) In such a situation, a person might not be held accountable for the conduct of another if before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense. (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c)(3).) There is no evidence to bring defendant within this exception. (See *People v. Cooper* (1975), 30 Ill. App. 3d 326, 334, 332 N.E.2d 453, 459; *People v. Hexum* (1967), 83 Ill. App. 2d 192, 200-01, 226 N.E.2d 877, 881-82.) Therefore, even under defendant's theory of the case, he would be accountable for the murder.

Defendant argues that there is insufficient evidence to support the accountability theory. However, the argument is untenable in view of defendant's theory of the case and the facts and circumstances of the crime. We conclude that the evidence presented was sufficient to support both principal and accountability theories, and consequently, the accountability instruction was properly given. See *People v. Stark* (1966), 33 Ill. 2d 616, 622, 213 N.E.2d 503, 506; *People v. Jones* (1978), 65 Ill. App. 3d

1033, 1040, 383 N.E.2d 239, 244; *People v. Crocker* (1978), 58 Ill. App. 3d 328, 330, 373 N.E.2d 621, 623.

■■ Defendant next argues that the trial court erred in not allowing him to introduce statements made by Silvestri to third parties. Defendant claims that these statements should have been admitted as declarations of a co-conspirator, thus qualifying as exceptions to the hearsay rule. For a statement to be admissible pursuant to the hearsay exception which allows declarations of a co-conspirator to be admitted against a defendant, it must have been made in furtherance of the conspiracy; it may not be merely a narrative of what has already been done. (*People v. Halpin* (1916), 276 Ill. 363, 374, 114 N.E. 932, 936; *People v. Simpson* (1976), 39 Ill. App. 3d 318, 321, 349 N.E.2d 441, 443; see *People v. Davis* (1970), 46 Ill. 2d 554, 558, 264 N.E.2d 140, 142.) Here, the State argues that the statements were made hours after the murder and were therefore not admissible, because statements made after the termination of a conspiracy are not admissible. *People v. Cassler* (1928), 332 Ill. 207, 218, 163 N.E. 430, 435; *Halpin*, 276 Ill. 363, 372, 114 N.E. 932, 935; *People v. Meagher* (1979), 70 Ill. App. 3d 597, 601, 388 N.E.2d 801, 804.

At trial, defendant attempted to introduce statements Silvestri made to police officers after defendant's arrest. Defendant made offers of proof regarding the questions asked and answers given during Silvestri's conversations with a police officer and an Assistant State's Attorney. As his offer of proof, defendant filed a police report and a memorandum which apparently reflect these conversations. However, these documents are not part of the record on appeal. Thus, the record does not establish whether the statements were made in furtherance of the conspiracy or, as the State suggests, they were made after the termination of the conspiracy. Moreover, it appears that defendant attempted to introduce these statements to show that Silvestri inflicted the fatal wound. As discussed above, such statements would not exculpate defendant. Therefore, the failure to admit these statements could not have prejudiced defendant.

Defendant also maintains that under the co-conspirator exception, statements made by Silvestri to two men whom Silvestri had also approached about killing his wife should have been admitted. However, there is no evidence that these two men were connected with the conspiracy between defendant and Silvestri. Therefore, these statements were not made in furtherance of the conspiracy. Thus, the statements were not admissible under the co-conspirator exception to the hearsay rule.

■■ Defendant also maintains that he was improperly prevented from cross-examining a police officer concerning his investigation of Silvestri. The trial court sustained objections to these questions, stating that the questions were irrelevant and beyond the scope of direct examination.

The scope of cross-examination is within the discretion of the trial court, and the trial court's ruling will not be reversed unless there is a clear abuse of that discretion. (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 502, 292 N.E.2d 387, 397; *People v. Jefferson* (1978), 64 Ill. App. 3d 200, 206, 380 N.E.2d 1070, 1075.) We agree with the trial court that in this case the subjective mind of the officer regarding the investigation of someone other than defendant was irrelevant, and that the questions went beyond the scope of direct examination. Defendant also argues that the officer should have been allowed to testify to the fact that the conversation occurred. However, the record reveals that the officer did testify that the conversation occurred. Therefore, defendant's argument is untenable.

■■ Defendant next contends that reversible error occurred because of comments made by the prosecutor in his closing argument. First, defendant complains that the prosecutor improperly referred to him as an "animal." We need not determine the propriety of this comment under the circumstances of this case. The comment could not have been a material factor in defendant's conviction or have prejudiced him because of the overwhelming evidence of his guilt. (See *People v. Mackey* (1964), 30 Ill. 2d 190, 193, 195 N.E.2d 636, 638.) Improper remarks during closing argument will be grounds for reversal only if they are a material factor in the conviction or cause prejudice to the defendant. *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363, 372; *People v. Martin* (1979), 74 Ill. App. 3d 566, 568, 393 N.E.2d 508, 510; *People v. Lewis* (1976), 38 Ill. App. 3d 995, 999, 349 N.E.2d 528, 532.

■■ Defendant also claims error in the prosecutor's statement that "Mr. Balls is no longer cloaked with the presumption of innocence, ladies and gentlemen." Defendant correctly states that the presumption of innocence remains with him at all stages of the trial. (*People v. Wilson* (1981), 92 Ill. App. 3d 370, 381, 415 N.E.2d 1315, 1324; *People v. Kurena* (1980), 87 Ill. App. 3d 771, 781, 410 N.E.2d 277, 286; *People v. Matthews* (1979), 69 Ill. App. 3d 65, 66, 387 N.E.2d 10, 12.) Thus, we agree with defendant that this comment was improper. (See *Wilson*, 92 Ill. App. 3d 370, 382, 415 N.E.2d 1315, 1324; *Kurena*, 87 Ill. App. 3d 771, 781, 410 N.E.2d 277, 286.) However, in light of the extensive evidence of defendant's guilt, this remark could not have prejudiced defendant or have been a material factor in his conviction. Moreover, the jury was properly instructed regarding the presumption of innocence, and therefore, under the circumstances of this case, the error was harmless. See *People v. Viser* (1975), 62 Ill. 2d 568, 586, 343 N.E.2d 903, 912; *Wilson*, 92 Ill. App. 3d 370, 382, 415 N.E.2d 1315, 1324; *Kurena*, 87 Ill. App. 3d 771, 781, 410 N.E.2d 277, 286.

■■ The last comment of which defendant complains is the prosecutor's statement that defense counsel "wants you to find [defendant] not guilty based on the evidence" and "God help us all if you do that." Defendant

argues that by this remark, the prosecutor expressed his personal opinion as to defendant's guilt. We disagree. In his closing argument, the prosecutor may apprise the jury of the evil results of crime, urge the fearless administration of the law and request the jury to consider the possibility that evil results might arise if defendant is released, provided such remarks are based on the evidence or legitimate inferences therefrom. (*People v. Galloway* (1979), 74 Ill. App. 3d 624, 629, 393 N.E.2d 608, 611; *People v. Finley* (1978), 63 Ill. App. 3d 95, 101-02, 379 N.E.2d 645, 649.) Here, the prosecutor was not expressing this opinion as to defendant's guilt, but was suggesting that evil results might arise if defendant was released. Moreover, this comment could not have prejudiced defendant under the circumstances of this case. Consequently, considering the comments complained of singly or together, we find no reversible error in the prosecutor's closing argument.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.