THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EUGENE FONZA, Defendant-Appellant.

First District (3rd Division)   No. 1—88—0301

Opinion filed May 15, 1991.—Rehearing denied August 27, 1991.

Randolph N. Stone, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Paul Gliatta, and Joseph J. Higgins, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant Eugene Fonza was found guilty of murder and attempted armed robbery.

On appeal, defendant contends that his convictions should be reversed and the cause remanded for a new trial on the grounds that the trial court: (1) excluded certified copies of a State witness' three prior felony convictions indicating not guilty pleas rather than the guilty pleas to which the witness testified; (2) allowed the testimony of an undisclosed rebuttal witness; (3) admitted improper hearsay testimony; and (4) denied the defense the opportunity to provide evidence of a pending charge against a State rebuttal witness.

For the reasons that follow, we affirm the trial court's judgment.

The victim, Maurice Noland, died of a gunshot wound to the chest. David Johnson, an eyewitness for the State, testified that the shooting occurred at 2 a.m. at a three-story apartment building at the corner of Homan and Grenshaw in Chicago, drugs were being sold out of the second-floor apartment on the back porch and Johnson was standing in line directly behind Maurice to buy cocaine. Charles Houston was also on the second-floor porch at this time. Johnson testified that after Maurice got his package of drugs, he proceeded down the porch stairs but was stopped by defendant. Defendant was holding a gun in his right hand and, with his left hand, was patting the pockets of Maurice's overcoat. Maurice grabbed defendant, who in turn pushed Maurice away and fired the gun.

Johnson also admitted that he had previously been convicted for theft, sentenced to 18 months' probation for that crime and that his probation term had been extended for nonreporting and he was still on probation the night Maurice was killed. Moreover, Johnson admitted using marijuana and cocaine on occasion and stated he had used marijuana the day before giving his trial testimony. In addition, John-

son stated that he told Steve Noland, Maurice's brother, about the events leading to Maurice's death.

Charles Houston, otherwise known as "B.C." or "Black Charles," testified for the State and corroborated Johnson's testimony concerning the shooting incident. Houston acknowledged that he was present on the second-floor back porch when the shooting took place and testified that defendant held a gun in one hand and was going through the victim's coat with his other hand, that the victim lunged at defendant, and when defendant pushed the victim away, the gun went off.

After the shooting, Houston went to Jessie Flowers' house, which was known as a "shooting gallery." Houston testified that defendant also appeared at Flowers' house and asked Houston if the man he shot was still alive. Houston then had a conversation with Debbie Hargrove, also known as "Cynthia," who was also present at Flowers' house. Houston told Hargrove that a shooting had occurred at the apartment occupied by her boyfriend, Michael Johnson, and asked Hargrove to find out if the victim was alive. He also testified that he did not tell Hargrove the identity of the assailant.

Charles Houston, then 31 years old, admitted that he had been using drugs off and on since age nine, had been incarcerated in prison about five times, and was on parole at the time of the trial. Houston stated, "I'm a crook" and "I've been in and out of jail most of my life."

During direct examination, Houston responded affirmatively when asked whether he had pled guilty to robbery in 1974, to unlawful use of a weapon in 1975, and to armed robbery in 1979. He further acknowledged that he had been convicted of unlawful use of a weapon in 1985.

On cross-examination, defense counsel attempted to show that Houston had pled not guilty to all his prior crimes. However, the trial court sustained an objection by the State and ruled that the attempted impeachment was a collateral issue.

Debbie Hargrove testified on behalf of defendant and stated that, while at Flowers' house, Houston admitted he had done the shooting at her boyfriend's apartment. Hargrove testified that later that evening she had a conversation with Ronald Banks and another man known as Pimp near Johnson's apartment. Hargrove testified that she told Banks what Houston had told her but denied ever telling Banks that she had seen the shooting.

At the close of defendant's case, defense counsel moved for a directed verdict, arguing that the State's case contained inconsistencies including Johnson's testimony that he had told Steve Noland, the vic-

tim's brother, about the shooting and yet no evidence was presented regarding that information.

On rebuttal, the trial court allowed the State to call Rosie Noland, the mother of the victim and Steve Noland, as a witness. Defense counsel objected on the grounds that calling her as a witness would violate the order excluding witnesses since she had been present in the courtroom during the trial. The State maintained that Ms. Noland would explain the absence of Steve Noland at the trial. The trial judge overruled defense counsel's objections and stated that defense counsel had made Steve Noland's absence an issue.

Rosie Noland testified that a few days after her son Maurice had been killed, Steve Noland fell down some stairs, hit his head and was admitted to a hospital for more than a month. Ms. Noland further testified that Steve has a bad memory, declined to talk to anyone about his brother, and was partially disabled.

Also in rebuttal, Ronald Banks testified that Debbie Hargrove told him that she had seen Houston shoot the victim on the back porch. Banks admitted that he had been convicted of forgery and was currently on probation for that offense. Banks denied being arrested in 1987 under the name of Steven Banks for possession of a controlled substance and testified that the only matter pending against him was a traffic case in Oak Park. The trial court denied defense counsel the opportunity to present extrinsic evidence in an attempt to show a Ronald Lewis Banks and a Steve Banks to be the same person as this witness. The trial court ruled that such information was a collateral issue and did not involve a question of credibility.

Defendant asserts that the certified copies of Houston's felony convictions were admissible to attack Houston's credibility. If the jury had been cognizant of Houston's past pleas of not guilty through the certified copies of his prior convictions, defendant maintains that the jury may have reached a different conclusion. We disagree.

■■ Well-established standards provide that the latitude allowed on cross-examination rests largely in the sound discretion of the trial court, and a reviewing court should not interfere unless there has been a clear abuse of discretion resulting in manifest prejudice to the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 269.) Since an obvious purpose of cross-examination is to test the credibility of the witness, any permissible kind of impeachment material is generally allowed, but a cross-examiner may not impeach a witness on a collateral matter. (*Collins*, 106 Ill. 2d at 269.) The test to determine whether a matter is collateral is whether it could be introduced for any purpose

other than to contradict. *Collins*, 106 Ill. 2d at 269; *People v. Wadley* (1988), 169 Ill. App. 3d 1036, 1046.

The importance attached to a plea of guilty is derived from the dubious assumption of veracity inherent in an accused's admission of guilt. Conviction subsequent to a not guilty plea apparently does not suggest to the jury that the witness has the same respect for the truth as a guilty plea. (See *People v. Reppa* (1982), 104 Ill. App. 3d 1123, 1128 (a plea of guilty shows that when a person was in fact guilty, he admitted it).) However, in *Reppa*, the defendant was prevented from testifying that he had entered guilty pleas in prior criminal cases. This court held that Reppa's conviction would not be reversed even if it was error to exclude the proffered testimony that his prior convictions resulted from guilty pleas, since it could not have so bolstered his credibility as to cause a different outcome.

■ The record in the present case reveals that Houston testified quite extensively about his criminal background, his parole status, and continued drug use. Houston specifically testified that he had four prior felony convictions, was high only a few hours before Maurice Noland was fatally shot, was present on Michael Johnson's back porch to buy cocaine, had been a member of a gang called the Black Gangster Disciples, was still using heroin and cocaine at the time of trial, and was a "crook" who had "been in and out of jail most of [his] life." The jury had more than ample evidence available to determine Houston's credibility. While admission of the material might have been appropriate, we do not believe the trial court abused its discretion in excluding the certified copies of his prior convictions.

Defendant also contends that Rosie Noland's testimony was inadmissible as improper rebuttal because it did not concern any evidence introduced during the defense case in chief and the State had no right to rebut statements made by defense counsel to the trial judge outside the hearing of the jury. Defendant further argues that Ms. Noland's appearance violated the trial court's order of exclusion since she had been present in the courtroom during trial and also violated Supreme Court Rule 412(d) (134 Ill. 2d R. 412(d)), which requires the State to give defendant at least seven days' notice, or such other time as the court may direct, of witnesses whom the State intends to call in rebuttal.

■ Admission of rebuttal testimony is within the sound discretion of the trial court, and its decision will not be reversed absent a showing of abuse of discretion. (*People v. Rios* (1986), 145 Ill. App. 3d 571, 584.) In the State's case in chief, David Johnson testified that he told Steve Noland about the shooting of Maurice. Since the State pre-

sented no further evidence on this matter, defendant argued in his motion for directed verdict that the State's case contained "grave inconsistencies." The State sought to explain Steve Noland's absence through the rebuttal testimony of his mother. In allowing Ms. Noland's testimony, the trial court noted that defendant had made an issue of Steve Noland's absence and later observed that Ms. Noland's testimony failed to effectively contribute anything to the case. Accordingly, the trial court did not abuse its discretion by allowing the testimony of Ms. Noland.

■ In assessing the effect of the court's violation of its own order excluding witnesses, the court will be required to weigh whether the witness' testimony is changed or affected by hearing the testimony, argument or opening statement of counsel. It is clear that this defendant has not been prejudiced by this rather unremarkable testimony. Absent a showing of prejudice, the judgment of the trial court will not be disturbed. *People v. King* (1985), 140 Ill. App. 3d 937, 940.

■ Regarding the disclosure of a witness, this court has held that the critical element is the State's intent, and until it forms an intent to call a person as a witness, there need be no disclosure. (*People v. Hine* (1980), 89 Ill. App. 3d 266, 267.) Rebuttal witnesses, more often than not, are brought to defense counsel's attention after defendant has rested. The State cannot anticipate the use of a rebuttal witness until the defendant gives some indication as to the nature of defense that will be advanced at trial. *Hine*, 89 Ill. App. 3d at 269.

Defendant next asserts that Rosie Noland's testimony was inadmissible as hearsay. Defendant specifically points to Ms. Noland's testimony that Steve "don't want to talk about his brother," that he "just wants to black it out," and that "he has a real bad memory."

■ Hearsay is testimony of an out-of-court statement which is offered to establish the truth of the matter asserted. However, out-of-court statements may be admissible when used for the purpose of showing the state of mind of the declarant at the time the declaration was made. *Heller v. Jonathan Investments, Inc.* (1985), 135 Ill. App. 3d 350, *rev'd on other grounds* (1986), 113 Ill. 2d 60; *Lundberg v. Church Farm, Inc.* (1986), 151 Ill. App. 3d 452.

In addition, a witness may properly testify regarding matters of which the witness has personal knowledge. *People v. Lewis* (1986), 147 Ill. App. 3d 249, 257 (the testimony of a mother concerning her minor daughter's understanding of the meanings of certain words was admissible).

■ Ms. Noland essentially testified as to her son Steve's physical condition, stating that he had fallen down her basement stairs and

suffered head injuries. She described the continuing disabilities which afflict Steve as a result of his accident and his state of mind relating to his brother's violent death. Some authorities argue that a declaration of a person's then-existing state of mind is an exception to the hearsay rule, while others urge that such declarations are just not hearsay statements. (*Lundberg v. Church Farm, Inc.* (1986), 151 Ill. App. 3d 452; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.4 (4th ed. 1984).) Since Ms. Noland is relating impressions that show Steve's state of mind, her testimony did not constitute hearsay and was properly received in evidence.

Defense witness Debbie Hargrove contradicted the testimony of one of the State's key occurrence witnesses. In rebuttal, the State offered the testimony of Ronald Banks to refute the testimony of Debbie Hargrove. Banks admitted that he had been convicted of forgery, was on probation for that offense, was present at Michael Johnson's apartment at the time of the shooting, was aware that Michael Johnson was selling drugs from the apartment and fled the scene after the shooting.

Defendant contends that Banks was the subject of a pending charge for possession of a controlled substance at the time of trial and sought to introduce the criminal history ("rap sheet") of a person named Ronald Lewis Banks, birth date April 22, 1960, which noted a controlled substance charge against a person named Steve Banks, birth date May 23, 1962.

Defendant sought to establish that the State's rebuttal witness was the same person, Steve Banks, noted in the Ronald Lewis Banks "rap sheet" and that the jury should be apprised of this matter to weigh the credibility of the witness' testimony.

Banks testified that he was born on April 22, 1961, and denied that he had ever used the name Steve Banks. Defendant then requested, and was refused, an opportunity to subpoena police officers who might identify the witness Banks as Steve Banks.

■ It is well established in Illinois that a showing of bias on the part of a witness is an accepted method of impeachment. A defendant is entitled to have the trier of fact informed as to any promises of leniency that may have been made to a witness relating to pending charges against such witness. *People v. Wilkerson* (1981), 87 Ill. 2d 151; *People v. Eddington* (1979), 77 Ill. 2d 41; *People v. Norwood* (1973), 54 Ill. 2d 253; *People v. Mason* (1963), 28 Ill. 2d 396.

It is critical that the trier of fact have an opportunity to hear the evidence of pending charges and determine for itself that no leniency has been offered in return for favorable testimony. In the *Eddington*

case, the trial court determined, after an examination of the witness outside the presence of the jury, that the prosecution had not offered any leniency on a pending drug charge. The supreme court reversed, however, concluding that the jury must have an opportunity to consider the subliminal influence that could be exerted by the pendency of a pending criminal charge.

In all of the cited cases, the existence of the pending charge against the witness is not at issue. Hence, these cases are distinguishable from the facts of the case at bar. Here there is a factual question as to whether the witness Ronald Banks is, in fact, Steven Banks or Ronald Lewis Banks and whether any charges have been lodged against this witness.

■ The issue of bias is so fundamental it cannot be deemed collateral. However, the issue of whether there is a nexus between the witness and a pending charge against one with the same last name would seem to be a collateral issue. Evidence which is intended to show bias must be direct and positive, not remote or uncertain. *People v. Davis* (1990), 193 Ill. App. 3d 1001, 1004.

Defendant's link between the State's rebuttal witness and the person actually charged with the possession of a controlled substance is tenuous. At best, the three persons involved share a common last name although differing birth dates.

Even counsel for the defense does not maintain that Ronald Banks, Steven Banks, and Ronald Lewis Banks are the same person. Instead, counsel seeks to bring in additional witnesses to identify whether or not they could be the same person. In addressing the trial court, counsel makes it clear that he has no opinion as to whether the three persons share a common identity and states:

> "MR. KING: Judge as you know from your vast experience, people that are under arrest often lie for various reasons, whatever reasons, it doesn't matter, but I would ask that that witness be brought back so that arresting Officer McBride, I think his name is—McLane, can say whether or not that's the fellow that he arrest[ed] and whether or not he gave the name Steve Banks and whether or not he had been arrested for possession of controlled substance.
>
> THE COURT: Why?
>
> MR. KING: Because, if that's the case then apparently he lied on the witness stand."

Counsel does not affirmatively allege that the witness is the same person against whom the charges are pending. Instead he appears to be on a fishing expedition with nothing except a common last name to

raise the court's curiosity. If that were enough, criminal trials of persons with relatively common names would be protracted, out-of-focus events separated from the substance of the case by a wall of collateral issues.

While the issue of bias is one of substance and not collateral, the issue of whether there is a nexus between the witness and the pending charge is collateral.

    ■ A cross-examiner may not impeach a witness on a collateral matter, but must accept the witness' answer. *People v. Collins* (1985), 106 Ill. 2d 237, 269.

    ■ A collateral matter has been defined as one irrelevant to the substantive issues. (*People v. Buckner* (1984), 121 Ill. App. 3d 391, 398-99.) The test to determine whether a matter is collateral is whether it could be introduced for any purpose other than to contradict. (*Collins*, 106 Ill. 2d at 269-70; *People v. Wadley* (1988), 169 Ill. App. 3d 1036, 1046.) The trial court is vested with broad discretion when applying this collateral test. *Collins*, 106 Ill. 2d at 269-70; *Wadley*, 169 Ill. App. 3d at 1046.

    ■ We have previously noted that a defendant is allowed wide latitude in cross-examining witnesses for bias or a motive to testify falsely. A pending criminal complaint would certainly be classified as an ample motive to give false testimony, and the cases cited here have made it clear that the jury is entitled to be apprised of such pending charges in order to determine the credibility of the witness. (*People v. Eddington* (1979), 77 Ill. 2d 41; *People v. Norwood* (1973), 54 Ill. 2d 253; *People v. Mason* (1963), 28 Ill. 2d 396.) However, a separate and distinct line of cases has developed a different rule where the witness is the subject of a mere investigation. While it is proper to cross-examine a witness about a pending charge to show bias, the scope of such cross-examination does not extend to a mere investigation of a crime. (*People v. Lawson* (1990), 193 Ill. App. 3d 396; *People v. Simmons* (1981), 99 Ill. App. 3d 519, *aff'd* (1982), 93 Ill. 2d 94; *People v. Bingham* (1979), 75 Ill. App. 3d 418.) The case at bar falls within a third category: Does the defense have the right to cross-examine a witness where it is unclear that the pending charge relates to that witness? We believe that the alleged pending charge is collateral to the issues of the case and is more compatible with the second category which limits the scope of cross-examination.

The case at bar also differs dramatically from the allegedly biased witnesses in the cited cases. In *Mason*, the witness was the State's only witness, and in *Wilkerson*, the testimony of the witness was the linchpin of the State's case. In the case at bar, the witness is called in

rebuttal to cast some vague shadows on the testimony of a defense witness.

Error in restricting the cross-examination of a witness whose testimony serves merely to buttress the prosecution, such as in this case, may be deemed harmless error. (*People v. Bingham* (1979), 75 Ill. App. 3d 418.) Since Banks' testimony is hardly crucial to the prosecution's case, a reversal is not warranted.

For all of the reasons stated, judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and WHITE, JJ., concur.